## San Antonio Gas Company v. State of Texas.

Decided November 1, 1899.

**1.  Anti-Trust Law—Combination by Corporations—Forfeiture of Charter.**

An agreement between the electric lighting and gas company corporations of a city whereby they are practically placed under one management, and the contracts for public lighting are to be divided among them, and all competitive bidding thereon suppressed, is in violation of the anti-trust law (Revised Statutes, article 5313), and subjects the charters of such corporations to judicial forfeiture at the instance of the State.

**2.  Same—Pleading—Quo Warranto.**

See the opinion for pleadings on behalf of the State held sufficient, even though it should be the rule that in a proceeding of this character, as being quasi criminal and in the nature of a quo warranto, the pleadings are to be more strictly construed than in ordinary civil suits.

**3.  Same—Combination Inhibited Though Prices Not Raised.**

Where the object of the combination is in restraint of trade and its effect to create a monopoly, it is no defense that there was no bad motive, and that the immediate result was a reduction of prices.

**4.  Same—Evidence—Conspiracy.**

A conspiracy may be proved by circumstances, such as obtaining the passage of a city ordinance tending to carry it out.

**5.  Same—Same—Conspirator Need Not Be Alleged Such.**

Where the evidence shows a person to have been a conspirator, his acts and declarations in furtherance of the common design are admissible in evidence, although the pleadings do not allege him to be a conspirator.

**6.  Same—Appointment of Receiver for Corporation Without Application.**

Under the statute the court may, where the charter of a quasi public corporation has been forfeited by its judgment at the instance of the State, appoint a receiver for

it without application therefor by anyone interested in the property. Act of April 2, 1897, sec. 3 (Sayles'·Civ. Stats., art. 1465).

**7. Same—Statutes Construed.**

Where the charter of a corporation has been forfeited by judgment of court, it is only in case the court has failed to appoint a receiver that article 682 of the Revised Statutes will apply, making the president and directors its trustees and authorizing them to take possession of its property.

APPEAL from Bexar. Tried below before Hon. R. B. GREEN.

*Houston Bros.,* for appellant.

*Thos. S. Smith,* Attorney-General, and *R. H. Ward,* Assistant Attorney-General, for appellee.

FLY, ASSOCIATE JUSTICE.—This is an action of quo warranto instituted by the State of Texas through Attorney-General Thomas S. Smith, against appellant for the purpose of forfeiting its charter on the ground of violation of the anti-trust law as embodied in Revised Statutes, article 5313. The trial was had before the court and resulted in a judgment of forfeiture of the charter of appellant and the appointment of a receiver to take charge of the property of the corporation and administer upon the same.

It was alleged in the information that on March 16, 1899, there existed two electric street railway companies in the city of San Antonio, W. H. Weiss being the president of both; that each of them was engaged in producing electricity as a motive power and as a commodity and merchandise at said city of San Antonio; that there also existed the Mutual Electric Light Company, a corporation duly chartered under the laws of Texas and engaged in manufacturing and delivering electricity for light and power purposes, and the appellant, the San Antonio Gas Company, a corporation duly incorporated under the laws of Texas, and engaged in manufacturing, producing, and vending gas and electricity in the city of San Antonio, also were in existence; that the four corporations mentioned entered into a conspiracy, as follows:

"First. That none of said companies named, interested as aforesaid in the production of electricity at said city of San Antonio, should make any bids upon the public lighting of said city of San Antonio, to be then renewed.

"Second. That all of said corporations, to wit, the Mutual Electric Light Company, the San Antonio Street Railway Company, and the San Antonio Edison Company, should be consolidated.

"Third. That all of said corporations should apply to the city council of the city of San Antonio for an extension until July 1, 1940, of their rights, privileges, and franchises theretofore granted to them and then existing in said corporations, to the end that all the interests of all said corporations might be pooled, united, combined, and consolidated in one common management and for one purpose, to wit, the control of the

production and price of said commodities, electricity and gas, for lighting and motive power.

"Fourth. That said two street railway companies should charge passengers five cents and no less for one continuous ride over any one of their lines, with one transfer to or from either line to the other, and that said proposition to said city council should contain a clause that said companies should be subject to all ordinances of said city, except in so far as such ordinance might conflict with said proposition, to the end that street car fares might not till July 1, 1940, be reduced below five cents.

"Fifth. That said proposition to said city council should contain a provision that all of the rights, privileges, and franchises to be so obtained should be assignable by said corporations, to the end that they might be conveyed to an assignee and be combined after the consolidation of said corporations.

"Sixth. That none of said corporations other than the Mutual Electric Light Company should, for the term of five years from June 1, 1899, bid upon the contract for the public electric lights of said city, and that said Mutual Electric Light Company should obtain from said city without competition on the part of the said other three corporations the contract for five years from June 1, 1899, for two hundred and fifty electric arc lights for lighting streets, parks, and highways, at ninety dollars per lamp per year, and that the said Mutual Electric Light Company should have, without competition on the part of the other corporations herein named, the contract for furnishing incandescent electricity to said city for lighting the public buildings of said city.

"Seventh. That defendant, the San Antonio Gas Company, should have, without competition from the other corporations aforesaid, the privileges of furnishing and vending gas to the inhabitants of said city.

"Eighth. That immediately upon the passage of said proposed ordinance of said city of San Antonio, each of said corporations should accept the terms thereof, to the end that the same should become irrepealable and of binding force upon said city of San Antonio."

There were allegations to the effect that the conspiracy was consummated and put into effect, a detailed account of the manner of accomplishment being embodied in the pleadings.

Appellant urged the following exceptions:

"Now comes the defendant herein, and, excepting to the sufficiency of the original petition herein, says the same is insufficient in law to entitle plaintiff to have and maintain this suit in manner and form as charged.

"And for special exception, defendant says that said petition is insufficient in this, that the same is not verified or supported by the affidavit of any person.

"And for further special exception, defendant says that all that part of said petition which avers that this and other corporations applied to or petitioned the said council of the city of San Antonio, and caused the mayor of said city to call an extra session of said council, at which

the ordinance set out in said petition was enacted by said body, together with said ordinance and allegations that the terms thereof were accepted, should be stricken out, because it is alleged that said ordinance was duly passed by the said council and duly approved .by the mayor of said city, and it is not unlawful for any person or corporations, either jointly or severally, to apply to or petition the city council for any privilege, or to accept terms and conditions upon which said privilege is granted, and because it does not appear that it was. unlawful for the council to pass said ordinance granting said petition and imposing conditions and limitations upon said grant; and because said ordinance, if unlawful, could not confer any right or impose any obligations upon defendant; and because the question of the wisdom of the policy of enacting said ordinance is a political and not a judicial question.

"And further especially excepting, defendant says that the allegations in said petition that defendant and the other corporations named are contemplating and are about to consolidate under one management is insufficient in this: that the intention to combine said corporations, or to be about to consolidate them, is not denounced by the statute as being unlawful; and because said allegation negatives the violation of the statute, which only makes it unlawful to create or carry out restrictions in trade, to increase or reduce the price of commodities, to prevent competition in the manufacture of commodities, to fix any standard or figure whereby their price to the public is controlled, and to make or enter into or execute any contract by which they will bind or have bound themselves not to sell, etc., as set forth and defined in article 5313, Revised Statutes, 1897, known as the anti-trust laws; and none of these offenses or violations of the law are set out in said petition, or any fact specifically alleged showing such violation with the certainty required to put defendant upon proof; and because it does not appear by said allegations whether the defendant and the other corporations named were about to increase or reduce the prices of the commodities referred to therein."

These exceptions were overruled.

It is the opinion of this court that the petition states a cause of action under the statutes, and that there was no error in overruling the exceptions embodied in the original answer. The first proposition under the first assignment is to the effect that an information in the nature of a quo warranto, while made a civil action by the statute, to be tried according to the rules for the trial of other civil suits, is in its nature quasi criminal, and should be strictly scrutinized and compelled to follow the statute by definite and certain allegation of facts. If it be the rule in Texas that more particularity in allegation is required in this class of cases than in any other civil action, for which we are cited to no authority, still we think the information has fully set forth the cause of action, and is more open to the criticism of being too diffusive than to the objection that it has failed to state the offense charged under the statute. It is not, as contended by appellant, "sufficient to allege in general terms the conclusion of the pleader, that the defendant has violated the law," and

we do not think that this can be charged against the pleading which sets forth with unnecessary particularity the acts done by appellant. The proposition that the demurrers should have been sustained because the act under which the information is drawn is unconstitutional, can not be entertained. The Supreme Court has passed upon the constitutionality of the law in question in several instances, and that it is constitutional is no longer an open question in Texas. Houck v. Anheuser-Busch, 88 Texas, 185; Brewing Co. v. Templeman, 90 Texas, 277; Waters-Pierce Oil Co. v. State, 19 Texas Civ. App., 1. In the last case a writ of error was refused by the Supreme Court.

There is no merit in the contention that the pleadings of appellee should have been held insufficient which alleged the different corporations combined to procure legislation from the city council of San Antonio. It was perhaps unnecessary to plead that fact, as it was a circumstance that, with others, established the combination in violation of the statute. It is clearly the right of corporations to apply to legislative bodies for legislation in their behalf, and it is clearly the right of the State to prove that such legislation was sought and obtained in the furtherance of an unlawful design to restrain trade and stifle competition. It was a circumstance, like any other, to be proved in order to establish a combination in violation of the laws of Texas. The information not only alleged the intention to combine, but that the combination was carried into effect through the ordinance obtained from the city council of the city of San Antonio.

A trust, as defined by article 5313, Revised Statutes, is "a combination of capital, skill, or acts by two or more persons, firms, corporations, or association of persons," for the purposes enumerated, the second being "to increase or reduce the price of merchandise, produce, or commodities." If the combination was made, and its object was in restraint of trade and to create a monopoly, the statute denounces it, no matter that the immediate result of the combination may be the temporary reduction of prices. To fix by combination a rate lower than one that has prevailed carries with it the power and ability to establish higher ones, and the object of the statute is to free business and commerce from being controlled by combinations, whether of persons or corporations. It does not matter that the immediate result of combination may be a reduction in the price of commodities, a dangerous arbitrary power has been lodged in its hand by which the business of the country may be absolutely dominated and prices arbitrarily controlled, regardless of the laws of trade or the rules of supply and demand. If the combination be one "to create or carry out restrictions in trade or commerce or aids to commerce," no matter what may be the result of the combination, the law has been violated. The law does not look to the results. The object of the statute is to guard the commerce and trade of the State so that it may flow in its regular channels, subject to the law of supply and demand and untrammeled by combinations of men or corporations which can at will control their course. The State is unwilling to intrust

to any combination, even though of her creatures, the tyrannical and oppressive power that is inseparably connected with the power to raise and lower prices of commodities and control the trade of the country.

It was alleged in the information that the four corporations named in the pleadings, among other things, did agree and conspire to apply to the city council of the city of San Antonio for an extension until July 1, 1940, of their rights, privileges, and franchises theretofore granted to them and then existing in said corporations, to the end that all the interests of all said corporations might be pooled, united, combined, and consolidated in one common management and for one purpose, to wit, the control of the production and price of said commodities, electricity and gas, for lighting and motive power." Obtaining the passage of the ordinance was a step, the culminating one, in the progress of the conspiracy, and it was relevant and material to prove the passage of the ordinance and its contents. The proof indicated that the passage of the ordinance was necessary to the consummation of the conspiracy, and while the city council may have been and doubtless was innocent of any design to lend any assistance to the violation of the law, yet the ordinance when passed became the culminating link in the chain of acts which rendered complete the combination in restraint of trade in the city of San Antonio. Conspiracies, being in defiance of law, are conceived in secrecy and executed in such a manner as to avoid detection and exposure, and proof of such unlawful enterprises must, in the very nature of things, be made by circumstances, and every circumstance which tends to cast light upon the transaction is legitimate and proper. As the passage of the ordinance tended to make known the fact of combination and its object, it was properly admitted in evidence.

It is a well settled rule of evidence that when the testimony establishes a conspiracy, the acts and declarations of a coconspirator made in furtherance of the common design are admissible against all of the conspirators. "The principle on which the acts and declarations of other conspirators, and acts done at different times, are admitted in evidence against the person prosecuted is that, by the act of conspiring together, the conspirators have jointly assumed to themselves as a body the attribute of individuality so far as regards the prosecution of the common design, thus rendering whatever is done or said in furtherance of that design a part of the res gestae, and therefore the act of all." 3 Greenl. Ev., sec. 94. It is immaterial whether the conspiracy be established before or after the introduction of the acts and declarations, the only requirement being that the whole of the evidence introduced on the trial establishes the existence of a conspiracy. It follows that if the whole of the testimony introduced upon the trial of this case established a conspiracy as alleged in the information, the acts and declarations of the representatives of the other corporations made and done in furtherance of the common design would be legitimate evidence against appellant. We are of the opinion that a conspiracy was established to which appellant was a party, as will fully appear from the summing up of the evi-

dence in another part of this opinion, and it was competent to prove the declarations of Weiss and Tillotson made in furtherance of the conspiracy. Although Tillotson was not alleged to be in the conspiracy, when the facts established the conspiracy and showed that Tillotson was a party to it, his declarations, made to further the common design, were properly admitted. Brown v. Chenoworth, 51 Texas, 470.

Not only were the acts and declarations of Weiss and Tillotson made in furtherance of the combination, but the appellant was present by its secretary and by Weiss, who swore that he was representing the appellant in obtaining the ordinance. What has been said in regard to the declarations of coconspirators applies with equal force to the declarations of Weiss to Johnson and Praeger, no objection being urged to the declarations on the ground that they were made after the ordinance had been passed and the conspiracy consummated.

In view of what has been said, it is clear that the admission of proof of the acceptance by defendant of the terms of the ordinance was not erroneous. It was a vital circumstance tending to establish the allegations of the information to the effect that a conspiracy had been formed to procure the passage of an ordinance that would render possible the accomplishment of the design in restraint of trade.

It is insisted by appellant that the evidence totally fails to establish a combination such as is condemned by article 5312, Revised Statutes of Texas. This court can not agree with that proposition. In January, 1899, Herman Kampmann was the president of the San Antonio Gas Company, owning and controlling a large majority of the stock. W. H. Weiss was at that time the president and entire owner of the stock of the other corporations. These corporations were the only manufacturers of electricity and gas in San Antonio. On or about January 17, 1899, Tillotson, a New York "promoter" or broker, came to San Antonio and procured options from Kampmann and Weiss on the shares of capital stock in their respective companies, both being arranged so as to mature on the same day. Appellant at this time had the contract for lighting the city, which would expire some months thereafter. In February bids for again lighting the city were advertised for, and although appellant had its poles and fixtures already erected for lighting the streets and had its wires in the public buildings of the city, no effort was made by it to again obtain the contract for lighting the city. No one bid on the lighting of the city, but instead thereof, early in March Weiss and Tillotson, claiming to represent all the electric plants in the city, made a proposition that the franchises of the companies should be extended until 1940; that an ordinance granting these franchises and virtually consolidating the corporations should be passed, in consideration of which certain things were to be performed by the corporations. The right to bid on the lighting of the city was quietly surrendered, and a contract giving the Mutual Electric Light Company the lighting for five years was freely and fully acquiesced in. A franchise for forty years was granted to each of the companies, regardless of the

time of expiration of their charters, all of which, with the possible ex-ception of the Mutual Electric Light Company, must expire before the end of the time for which the franchise was granted. Weiss time and again stated that the purpose for which the ordinance was sought was a consolidation of the companies, and the mayor so stated in a speech to the city council. Kampmann admitted that he was to assist in get-ting the ordinance passed, and promptly signed an acceptance of its provisions. The secretary of appellant was present, heard the declara-tions of Weiss, and wrote a letter for the corporation in which it was admitted that a consolidation had taken place. It is utterly inconceiv-able that Kampmann was ignorant of the facts attending the combina-tion of the corporation of which he was president with those of which Weiss was president. He received telegrams from Tillotson of the same purport as those to Weiss, and by a singular coincidence, when one was found in New York City, the other was there also. The facts detailed, as well as others, lead to the conclusion that a consolidation of the elec-tric light and gas interests of the city of San Antonio was accomplished by the passage of the ordinance, and that the combination was in full ef-fect before the sale to the New York parties was consummated. The con-solidation was a condition precedent to the sale. The acceptances by the different corporations were prepared in the office of Weiss, were in the same language, and Kampmann swore that he accepted the terms of the ordinance without being asked by anyone to do so. The combination was accomplished, and if the object was unlawful, appellee made out its case. What was the object of the conspiracy? Clearly to combine all the electric light and gas interests in the city, and put them under one management and supervision, so that the absolute control of the business of manufacturing and selling electricity and gas for lighting and motive purposes was placed in the hands of one management. In so doing the corporation acted in defiance of the law and forfeited its life to the State. "Corporations are recognized as creatures of the law, and they certainly owe obedience thereto; and when they fail to perform duties which they were created to discharge, and in which the public have an interest, or where they do unauthorized or forbidden acts, the State unquestionably has the right, and it is its duty, to object, and it may interpose by information, and wrest from the offending corpora-tion its franchise." State v. Gas Co. (Ind.), 53 N. E. Rep., 1089.

It does not matter that the parties to the unlawful combination may not have been actuated by any bad motive, or that the public may have been temporarily benefited by it; such combination was incompatible with public policy and is condemned by law. "The inquiry is not as to the degree of injury inflicted upon the public. It is sufficient to know that the inevitable tendency of the act is injurious to the public." State v. Gas Co., above cited.

It is provided in article 1465, in the third section, that a receiver may be appointed by a court of competent jurisdiction "in cases where

a corporation has been dissolved, or is insolvent, or in imminent danger of insolvency, or has forfeited its corporate rights." This statute clearly renders it discretionary with the trial court to appoint a receiver upon the forfeiture of the charter of a corporation, and without the application of any person interested in the property, as provision is fully made for such person in the preceding sections of the article in question. A distinction is made between a receiver appointed upon the application of some interested person, and one appointed in cases of dissolution, insolvency, or forfeiture of charter. We think the statute grants authority to a court, in case of forfeiture of a charter, to appoint a receiver independent of the request of anyone, and when this discretion has been judiciously exercised, we conclude that it should not be interfered with by an appellate court. We are referred by appellant to the California case of Havemeyer v. Superior Court, 24 Pacific Reporter, 121, where it was held that the receiver in case of forfeited charter could be appointed only upon application of some interested person. That may be true under the statutes of California, which are materially different from those of this State, but can not apply to a statute which clearly invests the trial court with power to appoint a receiver in cases where "a corporation has forfeited its corporate rights." To whom shall the property of the defunct corporation be intrusted, if no receiver be appointed? Appellant answers, to the president and board of directors of the defunct corporation. Article 682, Revised Statutes, is the only statute that provides that the president and board of directors shall be trustees and take possession of the property of the corporation, and such provision is made only in cases of the dissolution of a corporation. That the statute draws a distinction between a dissolution and the forfeiture of a charter is shown by the language of section 3 of article 1465, Revised Statutes, where provision is made for a receiver in case of dissolution, insolvency, or forfeiture. When a charter is forfeited the life of the corporation ceases, and no president and board of directors can survive it, and unless specially authorized by statute could not by virtue of their offices take control of the property of the corporation. If article 682 could apply to cases in which there has been a forfeiture of a charter by the State, it can only apply when no receiver has been appointed by some court of competent authority. If it be necessary to justify the power given by statute, it may be well to remember that appellant in this case is a quasi public corporation, and for the protection of the public interests it was necessary that a receiver should be appointed. To place the property again in the hands of the officers of the corporation would be to return it to the custody of those who had failed to perform their trust and had violated the laws of the State, and the public interests would not be subserved thereby. We call attention in this connection to People v. Ice Co., 18 Abb. Pr. (N. Y.), 382, and Herring v. Railway, 105 N. Y., 340.

That the appointment of a receiver will have the effect of a fine inflicted upon the shareholders in the defunct corporation can have no

weight in the decision of a court. The statute plainly confides the authority to the court to make the appointment, and that it will bear heavily upon the shareholders is a matter for legislative and not judicial consideration. In this case at least the violators of the law will be the ones who will suffer from the appointment of a receiver. We have treated the question of a receivership as though it was an open one in Texas, but it is not. The statute has been construed by the Supreme Court, and it was held that the trial court, when a charter is forfeited, has the authority, under the statute, to appoint a receiver at the instance of the State, independent of the request of a creditor. Railway v. State, 75 Texas, 434; Railway v. State, 83 Texas, 1. In the last cited case Judge Stayton said: "The Act of April 2, 1887, declares 'that a receiver may be appointed by any judge of a court of competent jurisdiction in this State, in the following cases: * * * 3. In cases where a corporation has been dissolved or is insolvent, or in imminent danger of insolvency, or has forfeited its corporate rights.' The former sections of this act made provision for the appointment of receivers when necessary for the protection of creditors, and they determine upon whose action receivers shall be appointed, while the section above quoted does not. The statute above referred to has application to private corporations generally, and while it may not have direct application to railway corporations, it recognizes the power of the courts to appoint receivers in all cases in which corporations are dissolved." In that case the charter of the railway was forfeited, and the receiver appointed at the instance of the State. This court inclines to the opinion that the trial court erred in holding that the act permitting amendments of a special charter was unconstitutional, but in view of the fact that the evidence of the combination denounced by statute was, in our opinion, sufficient to support the judgment, it does not become necessary to reverse on account of that error. The judgment is affirmed.

*Affirmed.*

Writ of error refused.

JAMES, Chief Justice, entered his disqualification, and did not sit in this case.