HARRY JOYCE V. STATE OF NEBRASKA.

FILED FEBRUARY 28, 1911.          No. 16,803.

1. **Criminal Law: EVIDENCE: ACTS OF ASSOCIATES.** Where a person is charged with a substantive offense of such a nature that he must be present at the time of its commission in order to support a conviction, the acts of any others who are associated with him in the commission of the crime in furtherance of the common design may be admitted in evidence.

2. ———: **INDICTMENT: SUFFICIENCY.** Where the gist of the offense charged is not the conspiracy, but is a substantive act of which one or more may be guilty, it is not essential that the fact of conspiracy or that the crime was committed in pursuance of a concerted design be averred in the indictment.

3. ———: ———. And in such case the fact that the persons concerned in the common crime are not jointly indicted makes no difference.

4. ———: **TRIAL: ORDER OF PROOF.** The order of proof is within the discretion of the trial court, and in such a case it is not essential that proof of the existence of a conspiracy be first made in order that evidence may be received of acts of one associated with the accused in the common design.

ERROR to the district court for Pierce county: ANSON A. WELCH, JUDGE. *Affirmed.*

*H. F. Barnhart, D. H. Sullivan* and *M. H. Leamy,* for plaintiff in error.

*Grant G. Martin, Attorney General,* and *George W. Ayres, contra.*

LETTON, J.

At some time during the night of January 18, 1909, the vault of the Farmers State Bank, at Hadar, Nebraska, was entered by burglars, the safe blown open, and the money therein stolen. Harry Joyce, the accused, was tried and convicted on an information charging burglary by the use of nitro glycerine, and larceny of the money in the safe. The evidence on the part of the state is to the effect that one Morrison and Riley were with the accused in Sioux City, Iowa, early in January, 1909, where they were arrested by the chief of police and held in custody until the 12th of that month. While thus detained their photographs were taken and measurements made. They were seen in Sioux City on the 13th and 14th of January, and Morrison and Riley were seen there again on the 20th and 21st. The proprietor of a rooming house in Norfolk, Nebraska, testifies he rented a room on the evening of January 15 to Morrison, Joyce, and Riley, that he saw them on the 16th, and on the night of the 17th, but not afterwards. The cashier of the bank at Hadar saw Morrison in the bank both in the forenoon and afternoon of the 16th, when she changed some money for him and sold him a small draft, he giving his name to her as J. W. Morrison. A bartender in Hadar also saw Morrison on several occasions on that day. Mrs. Stanfield, a nurse by occupation, who lived close to the railroad station at Norfolk, which is about five miles from Hadar, testified that early on the morning of the 19th the accused and Morrison came to her house and requested her to dress a wound upon Joyce's hand, saying that the injury was a cut, to which she replied that it was a burn. She further

testified that the wound was a burn at the base of the thumb and on the palm of the hand, and that she applied an antiseptic dressing.  A knife of peculiar shape was found in the vault among the debris on the morning after the explosion.  A hardware dealer at Norfolk testified he sold such a knife to Morrison, or to a man who strongly resembled him, on the 15th or 16th of January.

The principal defense was an alibi, supported by the testimony of the accused himself, and of other witnesses more or less reputable.  There was also evidence tending to show the absence of a scar on Joyce's hand about six weeks after the burglary.

It is contended in this court that the verdict is not sustained by sufficient evidence, and that it is contrary to law.  As to the first point:  The evidence is purely circumstantial, but it is indeed seldom that persons seeking to commit such a crime invite eye-witnesses to the act. The evidence seems amply sufficient to connect Morrison with the commission of the offense, and, while it is possible that the burn upon the hand of Joyce was not received at the time of the explosion which wrecked the safe, it is a singular circumstance that these men should be associated together for some time and immediately before the burglary, and should appear together at 5 o'clock in the morning immediately after the burglary, with a wound on the hand of the accused which he said was a cut made by a barbed wire, but which is shown to have been a burn, and that afterwards they returned to their former haunt in the slums of a neighboring city.  It is true these circumstances may only be coincidences, but such a concurrence of incriminating circumstances goes far to satisfy the mind that the only reasonable hypothesis upon which they can be explained is that of the guilt of the defendant.  Jurors are properly governed in weighing the probative effect of such testimony by the common experiences of every-day life, and, while the circumstances may have been susceptible of explanation consistent with the innocence of the accused, the fact that the testimony was met with

denial, and not with explanation, was evidently consid-
ered.   We believe the evidence supports the verdict.

At the trial the introduction of certain photographs
which were taken under the direction of the chief of police
in Sioux City was objected to.   These photographs had
been used in the search for the guilty persons, and, while
it is probable that the use of the photograph of the accused
during the trial of the case was unnecessary, there is no
contention made that it was not a true presentment of his
physiognomy, and it is not shown that he suffered any
prejudice by reason of his picture as well as his bodily
presence being before the jury.

Instruction No. 1, given at the request of the state, is
complained of.   This instruction is as follows:   "If you
find beyond a reasonable doubt from the evidence that, at
and before the time of the commission of the crime charged
in the information, there existed a common purpose to
rob said bank between the defendant and one James Mor-
rison, or between defendant and James Morrison and any
other person, and further find beyond reasonable doubt
that such common purpose continued until the commission
of said crime by one or more of said conspirators, then the
acts and declarations of either of said conspirators, in
preparing for and committing said crime, are the acts and
declarations of each of them.   And, in determining
whether or not such conspiracy existed on the part of the
defendant herein, you will carefully consider all the evi-
dence in this case as to the acts of the defendant before
and after the time said crime was committed, together
with all the other evidence in this case."   The ac-
cused contends that the acts and declarations of a party
not named in the indictment as a conspirator or desig-
nated therein as unknown cannot be proved, and further
that the evidence fails to show that a common design was
formed in the mind of the defendant and Morrison to
commit the crime charged.

We are of opinion that, where a person is charged with
a substantive offense of such a nature that he must be

present at the time of its commission in order to support a conviction, the acts of any others who are associated with him in the commission of the crime in furtherance of the common design may be admitted in evidence (3 Greenleaf, Evidence (16th ed.) sec. 94), and that where the gist of the offense charged is not the conspiracy, but is a substantive act of which one or more may be guilty, it is not essential that the fact of conspiracy or that the crime was committed in pursuance of a concerted design be averred in the indictment.    *Lamb v. State,* 69 Neb. 212; *Taylor v. State,* 3 Tex. App. 169; *Scott v. State,* 30 Ala. 503; *Martin v. State,* 89 Ala. 115, 18 Am. St. Rep. 91.

The fact that the persons concerned in the common crime are not jointly indicted can make no difference, because the inquiry is as to who was present participating in the act, and not who has been charged or indicted for the offense.    *People v. McKane,* 30 N. Y. Supp. 95; *Taylor v. State,* 3 Tex. App. 169; *San Antonio Gas Co. v. State,* 22 Tex. Civ. App. 118, 54 S. W. 289.

It is contended that proof of the conspiracy must first be made before the state can show acts of a co-conspirator; but this is drawing too artificial a line to be compatible with the proper administration of justice.    The order of proof is in the discretion of the trial court, and the circumstances may be so interwoven as to make separate proof of the design and of the substantive act impossible. *Clough v. State,* 7 Neb. 320; *Ream v. State,* 52 Neb. 727; 3 Ency. of Evidence, 425, note 64.    If the jury believed that the accused was present with Morrison at the time the burglary was committed, then, in view of all the other testimony with regard to their association together before and after the commission of the crime, the acts and declarations of Morrison in pursuance of the common purpose were properly received as evidence against him.

The trial court seems to have proceeded in this case with commendable care and deliberation, and the rights of the accused were carefully protected.    The jury were instructed with respect to the quantum of proof necessary

to convict where the evidence was circumstantial; they were cautioned as to the weight to be given the testimony of detectives; and they were further instructed that the information did not charge the crime of conspiracy, and that, if they failed to find beyond a reasonable doubt that at the time of the commission of the crime the accused was present aiding and assisting in breaking and entering the bank and opening the safe therein by the use of nitro glycerine, they should find defendant not guilty.

We find no prejudicial error in the record, and the judgment of the district court is therefore

AFFIRMED.