## COMMERCIAL BANK & TRUST CO. v. BUNTAIN et al.    (No. 2553.)

(Court of Civil Appeals of Texas. Amarillo. Nov. 25, 1925. Rehearing Denied Jan. 6, 1926.)

1. **Bills and notes** ☚103(1)—**Whether conspiracy to fraudulently procure wife's signature to husband's note was entered into before or after instructions, acts and declarations relied on immaterial.**

Whether plaintiff entered into conspiracy with maker of note sued on to procure signature of maker's wife by false representations that she would not be bound on, nor her separate estate subject to payment of, note, before or after instructions, acts and declarations relied on to prove conspiracy *held* immaterial.

2. **Fraud** ☚22(1)—**Diligence to discover falsity of representations unnecessary.**

One injured by another's false representations is not bound to exercise diligence to discover falsity thereof, but, in absence of knowledge to contrary, is entitled to rely and act on wrongdoer's statements.

3. **Equity** ☚11—**Court will prevent imposition by misrepresentations as to legal rights.**

If party dealing with another takes advantage of latter's ignorance of his legal rights, and makes misrepresentations relative thereto, case is presented for exercise of court's equitable powers to prevent imposition.

4. **Appeal and error** ☚1001(1)—**Bills and notes** ☚537(4)—**Conspiracy to procure wife's signature to husband's note and misrepresentations pursuant thereto held for jury.**

Evidence of conspiracy between plaintiff and maker of note sued on to procure signature of maker's wife by misrepresentations that she would not be bound by, nor her separate estate subject to, payment of note, and making of such representations pursuant to conspiracy, *held* sufficient to take such issues to jury, whose verdict is binding on appellate court.

Error from District Court, Dallam County; Reese Tatum, Judge.

Suit by the Commercial Bank & Trust Company against Mrs. Kate Buntain and husband. Judgment for named defendant, and plaintiff brings error. Affirmed.

Paddock, Massingill & Belew, of Fort Worth, and Tatum & Strong, of Dalhart, for plaintiff in error.

Bailey & Richards and W. I. Gamewell, all of Dalhart, and Cole & Simpson, of Clarendon, for defendants in error.

JACKSON, J. This suit was instituted in the district court of Dallam county, Tex., by the Commercial Bank & Trust Company, plaintiff, against Mrs. Kate Buntain and her husband, S. C. Buntain, defendants.

Plaintiff alleges:

That it is a banking corporation, organized under the laws of the state of Washington, with its principal place of business at Wenatchee, in Chelan county in said state. That the residence of the defendants is unknown to it, but that Mrs. Kate Buntain is living and can be found in Dallam county, Tex., and that her husband, S. C. Buntain, is a nonresident of Texas.

That on or about December 27, 1922, and on all the dates alleged, the defendants were husband and wife, residing in Chelan county, Wash., and about April 21st of that year they, for a valuable consideration, executed and delivered to it their promissory note for the sum of $5,796.37, payable on or before December 15th of that year. That on May 1st $300, on May 22d $500, and on July 22, 1922, $200, was by the plaintiff loaned to defendants, which last three amounts were advanced to enable them to carry on orchard operations in Chelan county.

That on December 27th thereafter all these obligations became due, and the defendants, in renewal thereof, executed and delivered to plaintiff their promissory note for the sum of $6,858.24, bearing interest at the rate of 8 per cent. per annum, payable 30 days after date at its banking house in Wenatchee, Wash., which note provided, if not paid at its due date, both principal and accumulated interest should draw interest at the rate of 12 per cent. per annum, and, in addition thereto, that defendants should pay reasonable attorneys' fees for collection, and that suit to enforce its collection might be laid in Chelan county, Wash. That defendants defaulted in the payment of the note, by reason of which plaintiff was forced to place it in the hands of attorneys for collection, to whom it agreed to pay, as remuneration for their services, $1,000, which amount was the reasonable and customary fee.

That the defendant S. C. Buntain was insolvent, but the defendant Mrs. Kate Buntain is solvent, and able to pay the obligation, and, although a married woman, and the lawful wife of her codefendant, she is liable to plaintiff for the indebtedness evidenced by the note, because at the time it was executed and delivered it was made payable at Wenatchee, in Chelan county, Wash., and both defendants were bona fide residents

---

☚For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

of said county, and the obligations imposed in the note are governed by the laws of Washington, which, notwithstanding the coverture of Mrs. Kate. Buntain, make her liable to plaintiff for the debt.

Plaintiff pleads the statutory law of Washington, and alleges section 6902, Rem. Comp. Stat., thereof to be—

"Contracts may be made by the wife, and liabilities incurred, and the same may be enforced by or against her to the same extent and in the same manner as if she were unmarried."

It also sets up the section (section 7300) which allows contract interest at a rate not exceeding 12 per cent. on written obligations.

The other statutes pleaded we think it unnecessary to set out.

Plaintiff sued out a writ of attachment, had it duly levied on the separate real estate in Donley county, Tex., of Mrs. Kate Buntain, asked for judgment for the debt against her, and a foreclosure of its attachment lien.

S. C. Buntain was cited by publication, and the court appointed W. I. Gamewell, a practicing lawyer of Dallam county, as attorney ad litem to represent said S. C. Buntain, who answered for him by general demurrer and general denial.

The defendant Mrs. Kate Buntain answered by general demurrer, and specially excepted to plaintiff's petition, it appearing therefrom that at the date of the execution of the note sued on, and all the dates therein alleged, she was a married woman, and the lawful wife of her codefendant, S. C. Buntain, and there was no allegation that the note was executed by her for necessaries for herself or her children, or for the benefit of her separate estate, or as surety with her husband for some other person. Hence the note is not enforceable against her in the courts of Texas because it would contravene the public policy of the state.

The defendant pleaded general denial and coverture; that she is a bona fide resident of the state of Texas and the county of Dallam; that she left her husband about April, 1923, with his consent, but is not permanently separated from him, and is and always has been willing to live with him as a faithful wife; that prior to her marriage with her husband he was indebted to plaintiff in excess of $5,000 past due, evidenced by his note and a mortgage on real estate in Washington; that plaintiff and her codefendant, prior to her executing the note of April, 1922, entered into a conspiracy to procure her signature to a new note, and it was agreed in such conspiracy that they would represent to her that it was necessary, under the laws of Washington, to secure her signature, because by her marriage she had obtained an interest in her husband's real estate; that she could not be bound thereby, and her separate estate in Texas could not be subjected

to the payment of the note; that, in pursuance to such conspiracy, her codefendant importuned her to sign the note, which she refused to do; that he then represented that the officers of plaintiff were reliable and trustworthy, and would inform her that she would not be liable on said note; that she was a stranger in the state of Washington, knew no one except her husband, and, relying upon him, she went to the office of plaintiff, and its officers advised that by marrying her codefendant she had destroyed plaintiff's security, and that it was necessary, under the law of Washington, that plaintiff secure her signature to a renewal note and mortgage; that, upon her declining, the plaintiff advised her that it was necessary for her to sign all papers, but that it was a mere form, and would not bind her or her property, and, relying on such misrepresentations, and believing that neither she nor her separate estate in Texas could be subjected to its payment, she was induced to execute the note with her husband; that, if it be the law in Washington that a married woman can be bound by joining her husband in a promissory note, then each and all the representations that she would not be bound were falsely made with the intention of inducing her to sign said note, and that such statements were material, and did induce her to sign said note; that, after the above-mentioned note became due, still believing and relying on the representations theretofore made, she executed the note herein sued on, in renewal of the first note; that plaintiff has caused a writ of attachment to issue and be levied upon her separate lands situated in Donley county, Tex., which attachment constitutes a cloud upon her title; prays that plaintiff take nothing by its suit; that said note be canceled and the attachment held for naught, and for general and equitable relief.

Plaintiff, by supplemental petition, replied to the answer of the defendant Mrs. Kate Buntain by general demurrer, special exceptions, and general denial.

The case was submitted to a jury, and on its verdict judgment was rendered against the plaintiff in error, hereinafter called appellant, and in favor of Mrs. Kate Buntain, defendant in error, hereinafter called appellee.

In response to the special issues the jury found, in substance, that S. C. Buntain and the officers of plaintiff, before Mrs. Kate Buntain signed the first note, entered into a conspiracy to procure her signature thereto by representing to her that it was a mere matter of form, as she could not be bound thereby nor her property in Texas subjected to the payment thereof; that in pursuance to such conspiracy, these representations were made to her both by her husband and the officers of plaintiff; that the representations were untrue; that she relied on such

representations, and, if they had not been made both by her husband and the officers of plaintiff, and had she known at the time she signed the note that her separate property in Texas could be subjected to the payment of the note, she would not have signed.

Appellant's first, fourth, seventeenth, and eighteenth assignments assail as error the action of the trial court in permitting appellee to testify, and in overruling its motion to strike her evidence to the effect that two or three days after she and her codefendant were married he told her of his financial affairs with plaintiff, and about the note; that the note would have to be renewed, and the bankers said to tell her that she would have to sign the renewal with him, and he requested her to do so and she refused; that he continued to importune her for about eight days, telling her she would not be liable on the note, nor her property in Texas subject to its payment; that his bankers were fine men, with whom he had done lots of business, and were honest and reliable, and would explain to her that it would be all right, because the uncontroverted testimony shows that the conversation testified to with her husband was had before any discussion between plaintiff's officer and S. C. Buntain had been had relative to the signature of appellee to the paper of her husband, and not in the presence or hearing of any of its officers, and is pure hearsay.

For the purpose of discussing this assignment and the others hereinafter considered, we here make a brief statement of the testimony material to a consideration of appellant's contentions.

The record is uncontroverted that appellee and S. C. Buntain, her codefendant, were married in Wenatchee, Wash., on December 19, 1921; that they were still husband and wife at the time of the trial; that at the date of the marriage her husband was indebted to plaintiff, evidenced by two notes, one in the sum of $600, due November 21, 1921, and the other in the sum of $5,487.35, due December 26, 1921; that W. D. Shultz, plaintiff's cashier, had, before she signed the first note, told her husband that the loan must be paid or secured, and had made him understand that plaintiff meant business; that S. C. Buntain then advised plaintiff that his wife had considerable property, and might sign a note with him; that they agreed that Buntain would bring his wife to the bank, and, if she had sufficient assets to make the loan good, the bank would consider it; that appellee had lived in Texas for years prior to her marriage with S. C. Buntain, and understood generally that a married woman was not personally liable on a promissory note of her husband, but knew nothing about whether such note would bind a married woman under the laws of Washington; that S. C. Buntain told his wife, some three or four days after their marriage on Decem-

ber, 19, 1921, of his indebtedness to plaintiff; that a new note would have to be given, and the bank advised him to tell her she would have to sign the new note with him. This she declined to do, and he advised her that her signature would not be binding on her nor upon her separate property in Texas; that he had been doing lots of business with the plaintiff, and its officers were honest and reliable, and they would explain to her that such transaction was all right; that thereafter she did accompany her husband to the bank, and, after a conference with the cashier of the bank, in the presence of her husband, signed the first note for her husband's antenuptial debt.

What occurred at this conference, and the exact time thereof, is sharply controverted, but the testimony of appellee is to the effect that this visit to the bank and the conference with Mr. Shultz, the cashier, concerning her signature to the extension note was had eight days after her marriage, December 19th; that Mr. Shultz prepared the note, and some other papers, a mortgage, and presented them to her husband, who affixed his signature thereto without inspection; that the note was then presented to her, and she declined to sign, and told the banker that she would not sign anybody's paper, and that under the law of Texas her signature would not be binding upon her or her separate estate; that the cashier of the bank advised her that by marrying S. C. Buntain she had acquired an interest in his property, and had spoiled the bank's security; that it was a mere matter of form to enable Mr. Buntain to transact his business, as under the laws of the state of Washington a married woman was required to sign all papers with her husband; and that she would not and could not be bound by affixing her signature thereto; and that it was after such statements were made to her, in the presence of her husband, by Mr. Shultz that she signed the first note; and that, when the note renewing said obligation was signed by her, Mr. Shultz advised her that it was the same kind of a note as the first one. Mr. Shultz admits that in the first conversation with appellee he learned she had considerable property.

The record discloses, without controversy, that on a written property statement furnished the bank by S. C. Buntain in the early part of February the plaintiff estimated his assets to be about $11,500, and his liabilities to be about $34,500, and there is no testimony showing any material change in his financial circumstances from December 19, 1921, the date of his marriage, until February 9, 1922, when this written statement purports to have been made; that the whereabouts of S. C. Buntain were unknown, and appellee had been residing in Dallam county for more than a year preceding the trial of this case.

The evidence does not show, without con-

tradiction, that the representations by S. C. Buntain to appellee were made before W. D. Shultz and Buntain had discussed securing the name of appellee to a note to extend the indebtedness of said Buntain to plaintiff. This indebtedness was evidenced by two notes; the one for $600 due November 21, 1921, before the marriage, and the other for $5,487.35, due December 26th after the marriage. W. D. Shultz admits that before the first conference he had with appellee, and at which she signed the note, he had peremptorily demanded payment or security from Buntain for plaintiff's debt, and had been informed by him that his wife had considerable property, and might sign a note with him for his indebtedness to the bank, and that they had agreed that Buntain should bring his wife to the bank, and, if her assets were sufficient to secure the debt, plaintiff would consider a renewal note with appellee's signature thereto.

Frank W. Shultz testified that on December 27, 1922, S. C. Buntain and appellee executed the first renewal of the first note signed by appellee with her husband.

Appellee testified that eight days after her marriage, December 19, 1921, which was December 27th thereafter, she accompanied her husband to the bank, and, after a conference with W. D. Shultz, in her husband's presence, signed the first note for her husband's indebtedness. The dates of the maturity of Buntain's antenuptial notes and the date of the first renewal of the first note executed by him and appellee are significant in connection with appellee's testimony.

[1] The court instructed the jury, in substance, that they would not consider the testimony of appellee as to any representations made to her by her husband—not in the presence of appellant—to the effect that she would not be bound on the note, nor her separate estate in Texas subject to the payment thereof, unless they found that the plaintiff and S. C. Buntain had entered into a conspiracy to procure her signature by such representations, and in pursuance thereof such representations had been made.

"It is immaterial whether the conspiracy be established before or after the instructions and acts and declarations; the only requirement being that the whole of the evidence introduced on the trial establishes the existence of a conspiracy." San Antonio Gas Co. v. State, 22 Tex. Civ. App. 118, 54 S. W. 289. See, also, City National Bank of Spur v. Rhome-Farmer Livestock Commission Co. (Tex. Civ. App.) 259 S. W. 184; Hughes v.

Waples-Platter Grocer Co. et al., 25 Tex. Civ. App. 212, 60 S. W. 981; State v. Racine Sattley Co., 63 Tex. Civ. App. 663, 134 S. W. 400; Harris v. State, 31 Tex. Cr. R. 411, 20 S. W. 916; 12 C. J. p. 635; 8 Cyc. 682; Encyclopedia of Evidence, vol. 5, p. 745. This, we think, disposes also of appellant's ninth, tenth, and fourteenth assignments of error.

[2] Appellant, by its sixteenth assignment, urges as error the refusal of the trial court, at its request, to submit to the jury whether or not appellee, by the exercise of ordinary care, could have known that the representations, if made, were false.

"A person injured by false representations of another is not bound to exercise diligence to discover the falsity of the representations, but, in the absence of knowledge to the contrary, is entitled to rely and act on the statements of the wrongdoer. Western Cottage Piano & Organ Co. v. Anderson, 45 Tex. Civ. App. 513, 101 S. W. 1061." Hammel v. Benton et ux. (Tex. Civ. App.) 162 S. W. 34.

See, also, Bell v. Gaines (Tex. Civ. App.) 237 S. W. 346.

[3] If a party dealing with another takes advantage of the other's ignorance respecting his legal rights, and makes misrepresentations relative thereto, a case is presented for the exercise of the equitable powers of a court to prevent imposition. Holt v. Gordon (Tex. Civ. App.) 176 S. W. 902; Ward et al. v. Baker et ux. (Tex. Civ. App.) 135 S. W. 620.

The thirteenth assignment does not present reversible error.

[4] The other assignments all attack as error the action of the trial court in refusing to direct the jury to return a verdict for appellant, because the uncontroverted evidence discloses that appellant did not enter into a conspiracy with S. C. Buntain to procure, by the misrepresentations alleged, the signature of appellee to the note, and did not, in pursuance of such conspiracy, make such misrepresentations.

The statement we have made from the record, without giving the evidence in greater detail, reveals, we think, sufficient testimony to present these questions as issues of fact for the determination of the jury, and therefore the verdict is binding on this court.

If we are correct in the foregoing conclusions, the cross-assignments of appellee attacking as error the action of the court in failing and refusing to sustain her plea in abatement, general demurrer, and special exception becomes immaterial.

The judgment of the trial court is affirmed.