### GREAT ATLANTIC & PACIFIC TEA CO. v. JONES INV. CO.

### No. 10913.

Court of Civil Appeals of Texas. Dallas.
Feb. 6, 1932.

Rehearing Denied March 5, 1932.

Touchstone, Wight, Gormley & Price, of Dallas, for appellant.

McCormick, Bromberg, Leftwich & Carrington, of Dallas, for appellee.

LOONEY, J.

Jones Investment Company (formerly Texas Ice & Cold Storage Company), a corporation, sued the Great Atlantic & Pacific Tea Company, a foreign corporation doing business in Texas, to recover damages for breach of a contract alleged to have been entered into between the parties, in which plaintiff agreed to sell and deliver, and defendant agreed to buy and pay for at the rate of 25 cents per cwt., all ice required in its retail grocery stores operated in the city of Dallas, excluding those located in that part of the city known as Oak Cliff.

Plaintiff alleged, in substance, and the proof sustained the allegations, that it was engaged in the business of manufacturing, selling, and delivering ice to customers; that defendant was engaged in operating a large number of retail grocery stores in the city of Dallas, in which ice was required for refrigerating purposes; that on January 7, 1927, plaintiff and defendant entered into an oral agreement, to the effect that plaintiff would sell and deliver, and defendant would buy and accept, all ice required in its said stores in Dallas (excluding those located in Oak Cliff) for the year 1927, the defendant agreeing to pay plaintiff 25 cents per hundred pounds; that the parties operated under the agreement until February 19, 1927, when defendant breached the agreement and refused to further accept and pay for ice delivered thereunder. The proof showed that, at the time the agreement was entered into, appellant was operating from twenty to thirty retail grocery stores in the city of Dallas, excluding those in Oak Cliff, and that by reason of the breach of the alleged agreement appellee suffered loss of profits amounting to the sum of $1,354.

Defendant answered by general denial, and specially pleaded that, if any such agreement as alleged by plaintiff was entered into, the same violated the anti-trust statutes of this state, and therefore was void and unenforceable. The case was tried to a jury, and upon their answers to special issues, the court rendered judgment in favor of plaintiff against defendant for the sum of $1,354, from which this appeal is being prosecuted.

By appropriate assignments and propositions, appellant urges a number of reasons for reversal, but, after due consideration, we overrule all except those challenging the validity of the verbal agreement.

█ Concretely stated, the agreement bound appellant to buy from appellee, at the price named, all ice required in its retail grocery stores in Dallas (excluding Oak Cliff) during the year 1927, hence by implication bound appellee not to buy such ice from any other person during 1927.

Article 7428 (7798), R. S. 1925, provides, under the heading "Conspiracies against Trade," that: "Either or any of the following acts shall constitute a conspiracy in restraint of trade. 1. Where any two or more persons, firms, corporations or associations of persons, who are engaged in buying or selling any article of merchandise, produce or any commodity enter into an agreement or understanding to refuse to buy from or sell to any person, firm, corporation or association of persons, any article of merchandise, produce or commodity. * * *"

In Wood v. Texas Ice & Cold Storage Co. (Tex. Civ. App.) 171 S. W. 497, were involved facts in legal effect the same as are involved in the instant case. Wood, a retail dealer in ice in the city of Dallas, and the ice company, a manufacturer and wholesale dealer in ice, entered into an agreement whereby the retailer agreed to buy from the manufacturer all the ice required to supply his trade during the term of one year. The agreement was assailed on the same ground that the contract under review is assailed; that is, that it violated the statute against trade conspiracies, hence was void. This court, in an opinion by Judge Rasbury, sustained the contention, saying, among other things, that: "The only question involved in the appeal is whether the contract quoted constitutes a conspiracy in restraint of trade under subdivision 1 of article 7798, R. S. 1911. Stripped of verbiage [except] as applied to the instant case, said subdivision 1 of said article, in substance, declares that it shall constitute a conspiracy in restraint of trade when two persons (firms, corporations, or associations) engaged in buying or selling any commodity agree to refuse to buy such commodity from or sell it to any other person, firm, etc. Such being the literal language of the statute, the contract in question, in our opinion, comes precisely within the statutory definition of the acts denounced thereby, since the declared purpose of the contract is to prevent appellant from buying ice from any other person, firm, corporation, or association. By the statute it is unlawful for two persons to agree that one of them will buy from the other exclusively of a given commodity as it is in like manner unlawful for one of them to agree to sell exclusively to the other a given commodity. It is unlawful to do either or both, and it is not necessary to do both in order to constitute the offense, and the reason therefor is the statute itself." For other decisions holding similar agreements void under the "Conspiracies against Trade" provision of the statute, see Troy, etc., Co. v. Fife (Tex. Civ. App.) 74 S. W. 956; Star, etc., Co. v. Fort Worth, etc., Co. (Tex. Civ. App.) 146 S. W. 604; Carroll v. Evansville, etc., Co. (Tex. Civ. App.) 179 S. W. 1099; Pennsylvania, etc., Co. v. McClain (Tex. Civ. App.) 200 S. W. 586; Dodd v. Rawleigh (Tex. Civ. App.) 203 S. W. 131, 133; American, etc., Co. v. Woods

(Tex. Com. App.) 215 S. W. 448, 451. These decisions were based on the theory that a restrictive agreement, within the meaning of the statute, is illegal and void without reference to its actual effect upon trade, or the intent of the parties.

In support of the contention that the agreement in question is valid and enforceable, appellee cites, among others, the cases of Cox, Inc., v. Humble Oil Refining Co., 16 S.W.(2d) 285, 287, decided by section B of the Commission of Appeals, and Montgomery v. Creager, 22 S.W.(2d) 463, decided by the Eastland Court of Civil Appeals. The essential facts of these cases and the instant case are, in our opinion, so similar as to invoke the same rule of decision. While the Commission of Appeals, in the Cox-Humble Case, expressly approved the holding of this court in the Wood-Texas Ice, etc., Co. Case, supra, yet differentiated it from the Cox-Humble Case, saying: "We are of the opinion that the contract condemned in the above [Wood] case is unlike that involved in this [Cox-Humble] case. There the contract obligated Wood 'to make all of his purchases from the first party during the term of this contract.' We think it was correctly determined in that case that the contract was in violation of the provision of our anti-trust laws, defining a conspiracy in restraint of trade. * * * Here plaintiff in error did not agree to buy all of the gasoline purchased by him from defendant in error. The agreement was that he would buy the amount used in the operation of a certain filling station. He was at liberty to purchase any amount of gasoline from any other company which might be used in the operation of any other similar business. The effect of the agreement made by him was to contract to purchase gasoline from defendant in error, the amount to be measured by that used in the operation of a particular filling station. Such agreement did not constitute a conspiracy in restraint of trade, but was a valid and enforceable one."

Appellee, evidently taking a cue from the language just quoted, makes the contention here that, appellant, having merely agreed to buy the amount of ice required to be used for refrigerative purposes in its store (from 20 to 30 in number), was not thereby prevented from buying from others as much ice as it might need for other purposes, hence the agreement was not a conspiracy, but valid and enforceable.

It is obvious that a similar contention could have been made in the Wood-Texas Ice, etc., Co. Case, and in each of the other cases where exclusive agreements were held void as being conspiracies against trade, that is, in each of these cases it could have been said that the particular agreement did not prohibit sales to or purchases from others to be used in other and different connections—indeed, it is difficult to imagine an agreement within the

definition of a "conspiracy against trade" where room would not be left for sales to, or purchases from others, of the commodity involved, to be used or sold at other places or in different connections.

■ We cannot adopt this view, courts are not concerned with the wisdom of legislation, nor are they permitted to speculate as to the degree of restraint or the extent of harmfulness· of a particular exclusive agreement. Where parties engaged in buying or selling any article of merchandise, etc., agree·to refuse to buy from or sell to another, the arrangement constitutes a "conspiracy against trade," violates the law (article 7429), and is wholly void and unenforceable, either in law or equity (article 7437), and this without regard to the reasonableness of the agreement or the degree of its restrictions as to time, place or activities permitted thereunder. The Supreme Court, in Texas & Pacific Coal Co. v. Lawson, 89 Tex. 400, 401, 32 S. W. 871, 34 S. W. 919, 920, construing the conspiracies-against-trade provisions of the statute, through Judge Denman said: "The statute ignores the common law distinction between restrictions which are reasonable and those which are not, and commodities which are of prime necessity and those which are not. * * * It relieves the courts of the difficulty of determining whether, in a particular case, any effect will be given such a contract by declaring that it 'shall be absolutely void, and not enforceable, either in law or in equity.' " This rule was followed by our courts until the decision of the Commission of Appeals in Cox, Inc., v. Humble, etc., Co., supra. In the case·of State v. Racine Sattley Co., 63 Tex. Civ. App. 663, 134 S. W. 400, 403, Judge Jenkins of the Austin Court voiced the same idea in the following language; he said: "Under our statute the effect on the public of an agreement which is against public policy is not essential; the tendency is enough to bring it within the condemnation of the law. [Anheuser-Busch] Brewing Ass'n v. Houck [Tex. Civ. App.] 27 S. W. 692, 696; [San Antonio] Gas Co. v. State, 22 Tex. Civ. App. 118, 54 S. W. 289, 293. .In view of our anti-trust statutes and the decisions thereon, it cannot be doubted that it is the settled policy of this state to prevent restrictions in trade. 'The law did not intend to regulate restrictions in trade, but to prohibit them entirely, without regard to their immediate effect on trade.' " Discussing the facts of a case within the "combination" feature of the statute, the court, in San Antonio Gas Co. v. State, 22 Tex. Civ. App., 118, 54 S. W. 289, 292, said: "It does not matter that the immediate result of [the] combination may be a reduction in the price of commodities,— a dangerous arbitrary power has been lodged in its hands, by which the business of the country may be absolutely dominated, and

prices arbitrarily controlled, regardless of the laws of trade or the rules of supply and demand. If the combination be one 'to create or carry out restrictions in trade or commerce or aids to commerce,' no matter what may be the result of the combination, the law has been violated. The law does not look to the results." The same idea was expressed by the court in Star Mill & Elevator Co. v. Fort Worth, etc., Co. (Tex. Civ. App.) 146 S. W. 604, 606, as follows: "The purpose, we think, as indicated by the scope of the statute and the language used, was to denounce as illegal, without reference to the intent of the parties and without reference to its actual effect, every agreement or understanding between parties engaged in buying any commodity, whereby they, or either of them, was to refrain from buying such commodity from any one having same for sale. State v. Racine Sattley Co. [63 Tex. Civ. App. 663], 134 S. W. [400], 403."

The basic facts involved in Montgomery v. Creager, 22 S.W.(2d) 463, decided by the Eastland court, are substantially the same as the facts of the instant case, and should in our opinion have been controlled by subdivision 1 of article 7428, that denounces conspiracies against trade. However, the court did not discuss the case with reference to the applicability of this feature of the statute, but held that, as the facts failed to show the existence of a combination, within the meaning of the statute, the contract was valid and enforceable. We are in accord with the view of the court that the agreement did not violate the combination provisions of the statute (article 7426), but dissent from the implied holding that it was not in violation of the/ conspiracies provision of the statute (article 7428). We therefore respectfully decline to recognize either the Cox-Humble or the Montgomery-Creager Case as a controlling authority; for, if it can be said that these cases were correctly decided, it must follow that each such case will present a distinct problem for the courts, to· be determined, not according to definite provisions of the statutes, but on considerations touching the reasonableness, whether or not, of the agreement or understanding involved.

In view of the definite provisions of the statutes and the decisions of our courts construing same, we are of opinion that any agreement or understanding between parties engaged in buying or selling any article of merchandise, produce or commodity, to refuse to buy from or sell to any person, firm, corporation or association of persons any such article of merchandise, produce or commodity, is prohibited and pronounced by the statute absolutely void and unenforceable either in law or·equity, and this without regard to its reasonableness or the effect such agreement may or may not have upon trade.

We hold that the agreement involved in the case at bar violated the statute; therefore is void and unenforceable. The judgment of the court below is reversed, and judgment here rendered for appellant.

Reversed and rendered.