·CITY NAT. BANK OF CORPUS CHRISTI v.
CITY OF CORPUS CHRISTI et al.
(No. 6624.)

·(Court of Civil Appeals of Texas. San Antonio. June 22, 1921. Rehearing Denied June 29, 1921.)

**1. Depositaries** ⬠⟹6—**City of Corpus Christi could reject all bids offered for depository or treasurer.**

The city council of Corpus Christi, under ·Special Charter, art. 10, § 7, in Sp. Laws 1909, ·c. 33, in the exercise of reasonable and sound discretion, is clothed with the power and authority to reject any and all bids offered under an advertisement for the use of the public funds of the city, and it has the inherent power to reject all bids if none is offered that gives a fair remuneration for the use of the money, or if the bids are the result of fraudulent combination; but such discretion must not be arbitrarily, corruptly, or unreasonably exercised.

**2. Depositaries** ⬠⟹6 — **Council held to have acted within bounds of discretion when it rejected bids for treasurer.**

Council of the city of Corpus Christi *held* to have acted within the bounds of a sound discretion when it rejected bids made by two banks seeking the position of city treasurer.

**3. Contracts** ⬠⟹119—**Combinations among bidders render contracts void.**

Arrangements and combinations among prospective bidders for municipal contracts to prevent competition among themselves, and to bring about an award at a figure which is not the result of an honest competition, are contrary to public policy and void.

Appeal from District Court, Nueces County; W. B. Hopkins, Judge.

Action by the City National Bank of Corpus Christi against the City of Corpus Christi and others. Judgment for defendants, and plaintiff appeals. Affirmed.

E. B. Ward and J. C. Scott, both of Corpus Christi, for·appellant.

Jas. M. Taylor and Kleberg, Stayton & North, all of Corpus Christi, for appellees.

FLY, C. J. This is an appeal from an interlocutory order dissolving a restraining order issued at the instance of appellant against the city of Corpus Christi, its mayor, P. G. Lovinskiold, its commmissioners, William Shely, W. H. Griffin, H. N. Carter, and D. A. Segrist, its secretary, John T. Bartlett, ·and Corpus Christi National Bank, which commanded said appellees, the city and its officers, to accept the bid of appellant for the position of city treasurer and appoint appellant to that position for two years and deliver to it the funds of the city, upon its qualification as required by law; that said city

and officers be enjoined from further advertising for and receiving bids for treasurer, and from purchasing breakwater construction bonds with the sinking fund or any other fund. The temporary restraining order was made on May 10, 1921, and continued until May 17, 1921, when it was considered on its·merits and dissolved.

It was alleged in the petition that, as required by the charter, the commissioner of receipts, disbursements, and accounts had, in the month of April, 1921, duly advertised for bids for the office of city treasurer, requiring such bids to be made before 5 o'clock p. m. on April 29, 1921, and appellant duly and legally filed its bid, agreeing to pay to the city on its funds interest at the rate of 5½ per cent. per annum on daily balances and tendered a good ·and sufficient bond in the sum ᐧof $500,000, and was ready, able, and willing to comply with all the conditions of the bid. It was further alleged that there was but one other bid, which was made by the Corpus Christi National Bank, and was for 5 per cent. per annum on the daily balances; that after such bids were received the mayor and commissioners refused to pass upon the bids and select a treasurer, and have advertised for other bids, in which are numerous conditions, among the number being that no rate of interest less than 6 per cent. per annum on daily balances will be considered nor a higher rate of interest than 6 ᐧper cent. per annum will be paid on loans made to the city. It was also alleged that $350,000 of the funds of the city were in the possession of the Corpus Christi National Bank, the former treasurer of the city, and that some of the appellees are about to purchase "seàwall and breakwater construction bonds" issued by the city in the sum of $100,000, and appellant asked that they be restrained frọm so using the funds. The city answered that the first advertisement for bids was illegal and not in compliance with the city charter; that neither of the bids was filed within the legal· time, and that the bids were properly rejected because there was a conspiracy between the two banks; that appellant had by an agreement prevented the Corpus Christi National Bank from bidding as high as it would have done, and thus deprived the city of a higher rate of interest on its daily balances.

This˙is really a suit for the position of depository or treasurer of the city of Corpus Christi, prosecuted by appellant, a local bank, on the sole ground that the mayor and com-ᐟ missioners of that city having advertised for bids, as provided in its charter, for the position of depository or treasurer, and appellant having bid 5½ per cent. per annum on daily balances and the competing bank having subscribed only 5 per cent., appel-

lant was legally entitled to the award, and that the municipal authorities had no authority to reject the bids and advertise for others, as they proposed to do. In other words, it is contended that under the charter the mayor and commissioners were compelled to award the position of depository to the highest and best bidder, and that they could exercise no discretion in the matter.

In section 7, art. 10, of the special charter of the city of Corpus Christi, found in Special Laws of 1909, chapter 33, and which section was fully construed, as to the powers of the city council in accepting bids, by this court in City of Corpus Christi v. Mireur, 214 S. W. 528, it is provided that—

"The office of city treasurer shall be let by contract to the highest and best bidder, in the discretion of the city council, and in determining the highest and best bidder, the highest rate of interest to be paid upon daily balances and the value of bond tendered shall be the criterion that shall decide."

It is also provided that at the next regular meeting of the council after said bids are opened the city council shall proceed to pass upon said bids and elect a treasurer, who shall hold his office for a period of two years and until his successor is elected and qualified. This court, in the Mireur Case, held that no office could be created in the manner contemplated in the charter, but that a depository would merely be chosen for the moneys of the city. In that opinion it was also held that the charter gives no discretion to the city council in the selection of a depository except in ascertaining the highest and best bid, and that—

"When the highest rate of interest on daily balances and the value of the bond is ascertained, the end of all discretion is reached, and the law then commands the city council to let the contract to the bidder of the highest rate of interest and who has the most valuable bond."

It was held that the award to the lowest bidder with the least valuable bond was not within the discretion of the city council.

It was not held in the Mireur Case, however, that the city council had no discretion in the matter of rejecting any and all bids made for the deposit of the city money, nor has any decision tending to uphold any such doctrine been presented to this court. It cannot be contemplated for a moment that the Legislature intended to confine the discretion of the city council in the selection of a depository to one of the bidders, regardless of the size of the bid, and that it could not consider its inadequacy to properly remunerate the city for the use of its money, nor proof of any fraud exercised by the bidders to obtain the use of public money without paying a just value. It is well known that in small towns or communities there are only a limited few who are in a position to bid for the use of large sums of public money subject to a daily checking out of the same, and if the highest and best bid, however trivial and insignificant it might be, must be accepted by the city council, the taxpayers would be placed at the absolute mercy of any set of men who might conspire to bid for public money and then divide the spoils and plunder. Even though there should be no combination to defraud the public, it cannot be conceived that the Legislature intended to withhold the exercise of discretion from the city council in regard to determining whether any bid for the use of public money was sufficient to warrant a granting of its use to the bidder. The charter undoubtedly clothes the city council with discretion in determining the highest and best bid and at the same time gives directions as to how that discretion should be exercised, but it is not intimated that the city council cannot exercise a sound discretion in preventing predatory attacks upon the public money through bids which fail to give customary and just compensation for the use of such money. To license such use of public funds would be a flagrant attack upon the rights of taxpayers and utterly destructive of public policy. Under the theory contended for by appellant no bid, however contemptible and insignificant, could be rejected by the city council, but when once bids are received in answer to an advertisement issued by a commissioner of the council the inexorable decree of fate has gone forth and no power can release the public from the injustice that is inflicted upon them, writhe as they may under the injury and wrong. Such a theory staggers reason, and would imply that the lawmaking power had legislated to place the people of Corpus Christi at the mercy of those controlling the money of the community. We will not indulge in any such presumption.

The section of the charter under consideration gives discretion to the council in passing upon the highest and best bid, and furnished the criterion on which the council shall act. That criterion is that the bid shall be awarded to the bidder offering the highest rate, but it is left open to the council to say what is the best value in the bonds offered. There is no provision in the charter commanding that, when one or more bids are made, the highest, however low and insignificant it might be, shall be accepted. Under that construction, if one hundredth of 1 per cent. per annum was the highest bid offered, the public money would be used for that farcical sum, when it was worth much more in commercial circles. The provision of the charter was undoubtedly enacted in the interest of the people of the municipality, and not, as contended in argument by appel-

lant, in the interest of banks or individuals who might be bidders for the use of the public funds. If the highest bid, however, contemptible and insignificant it might be, must, under the inexorable demands of the law, be accepted, the bidder would receive that protection so often heretofore given to classes and certain interests in our government; but, as in every instance of such protection to the individual, class, or corporation, the masses would be paying for the protection.

[1] We hold that the city council of Corpus Christi, in the exercise of reason and a sound discretion, were clothed with the power and authority to reject any and all bids offered, under the advertisement for the use of the public funds of the city of Corpus Christi. As in the case of judicial discretion, it could not be arbitrarily or unreasonably exercised, but with the view of conserving the public interests and upholding the principles of public policy. While held to the strict letter of the law in not awarding a bid except to the highest and best bidder, the city council has the inherent power to reject all bids, if none is offered that gives a fair remuneration for the use of the money, or if the bids are the result of fraudulent combinations; but such discretion in the rejection of bids must not be arbitrarily, corruptly, or unreasonably exercised. It would be just as reprehensible and indefensible to reject fair bids which offer a just remuneration for the use of the public funds as to award the contract to the lowest bidder, or to award it to a highest bid that was so low as to be a fraud upon the public.

Discussing the proposition as to the right of the city council to reject any and all bids when, within the exercise of a sound discretion, it deems that public policy and the public interest require such rejection, Judge Dillon thus states the rule in Municipal Corporations, § 811:

"In the absence of any statutory restriction upon the power to contract, the selection of a contracting party rests within the discretion of the municipality, and if the charter does not expressly require that contracts shall be let to the lowest bidder, the action of the municipality acting through its officers in accepting a bid, whether it be the lowest or not, rests within the discretion of the designated officials, and their determination will not be interfered with so long as they act in good faith. If, however, the statute requires that the contract shall be awarded to the lowest bidder, no contract can be let to any person other than to the lowest bidder. But, even under such a statutory provision, the municipality is not compelled to make a contract with the lowest bidder; while no contract can be let to any other person, the body or officers awarding the contract, acting in good faith, may refuse to award it to the lowest bidder if they deem it for the best interests of the city to do so, and they may reject all the bids and readvertise."

Changing the words "lowest bidder" to "highest bidder," the language fits this case exactly. The text is fully supported by the Court of Appeals of New York in the case of Walsh v. Mayor, etc., of New York City, 113 N. Y. 142, 20 N. E. 825. The court in that case was considering a contention that, a bid being the lowest, under the statute, the municipality was without discretion to reject it, and it was said:

"It is true that the language of that act is quite peremptory, and provides that all contracts 'shall be awarded to the lowest bidder for the same, with adequate security, and every such contract shall be deemed confirmed in and to such lowest bidder, at the time of the opening of the bids, estimates or proposals therefor, and such contract shall be forthwith duly executed * * * with such lowest bidder.'"

The language of that statute is stronger and more far-reaching than the charter provision we are considering, and yet it was held by the New York court:

"Under such law it is quite clear that no contract could be let to any person other than to the lowest bidder with adequate security. The obvious purpose was to secure to the city the advantages of having its work done by the lowest bidder therefor after proper advertisement. I do not think it meant to compel the making of a contract even with such lowest bidder, if it were plain that the bids were all largely in excess of the real cost of the work. If by combination or other cause all of the bids were greatly in excess of such cost, and it so appeared to the commissioners, and that the true interests of the city demanded that none of such bids should be accepted, we think that such commissioners, acting in good faith, would have the right to reject them all, and advertise over again. The existence of such a power might frequently be necessary to protect the city against fraudulent combinations, evidenced, perhaps, by informal bids for low prices, and if such power did not exist, ending in the award of a contract to the lowest bidder whose bid was formal, but at a price enormously in excess of the real cost of the work. It was never intended, as we think, to render it absolutely necessary in such a case that an award of the contract should be made to such a bidder. It was meant that no contract should be awarded to any but the lowest bidder, and whether to him or not would be a question for the body awarding the contract, acting in good faith, and for what they deemed the true interests of the city.

"If otherwise, if there were but one bid, and that vastly in advance of a fair price and decent profit, nevertheless, the city would be bound to have such a contract saddled upon it. It would require the plainest commands from the Legislature before we should be able to bring ourselves to think for a moment that any such result was intended. We do not think that the act cited contains such language, or that it was ever intended to accomplish any such end."

There can be no doubt as to the logic and force of that decision.

With the principles enunciated in view, we enter into a consideration of the facts. On April 14, 1921, a notice was issued and properly published asking for bids for the office of treasurer of the city of Corpus Christi, and stipulating that the bids must specify the rate of interest that will be paid on daily balances of city funds, and what rate of interest would be charged on daily loans. It was also stated that $75,000 would be borrowed for current expenses, $7,000 for street fund and $10,000 for waterworks fund. In response to that advertisement the Corpus Christi National Bank bid 5 per cent. per annum on daily balances, and agreed to furnish the sums named in the advertisement at 6 per cent. per annum on daily loans, and tendered a bond in the sum of $1,000,000. The City National Bank, appellant, bid 5½ per cent. interest per annum on daily balances and to "charge the city 6 per cent. per annum on daily loans to pay vouchers issued daily as funds are needed until taxes are collected." At the same time it tendered a bond in the sum of $500,000 to faithfully perform its duties.

The evidence indicates that the bids were not at once considered by the council, but it was decided that both bids would be referred to the city attorney for an opinion. On May 6 both bids were rejected, after receiving the opinion of the city attorney. At the time the bids were made the city was receiving from its depositary 5.6 per cent. interest on daily balances, and will receive that rate of interest on its daily balances until December, 1921, when the contract with its depositary expires. The bids were rejected because the council deemed the rate of interest offered by the highest bidder to be too low, and because it was rumored that the two banks had agreed to offer a low rate of interest and then divide the money between them. It was shown that money was worth at the time the bids were offered a great deal more than it was two years ago when it was loaned by the city at 5.6 per cent. per annum. The evidence was sufficient to show that money on call was bringing more than the highest bid made for the city money. It was shown by the testimony of appellant that it had recently offered 6.10 per cent. interest per annum for money belonging to the state. The evidence shows that the officers of the two bidding banks had a tacit understanding that one was to bid 4½ per cent. interest and the other also bid and then divide the funds. Acting under that agreement the Corpus Christi Bank made a bid of 5 per cent., but appellant, contrary to the understanding, did not bid 4½ per cent. but bid 5½ per cent. There was evidence tending to show collusion. The Corpus Christi National Bank would have made a different bid from what it did had the understanding with appellant not existed. The rates that each was to bid was discussed by the parties.

[2] The evidence tends to show that the city council acted within the bounds of a sound discretion when they rejected the bids made by the two banks. There was a tacit agreement between the parties to obtain the use of the public funds for a less sum than would have been bid if such agreement had not been made.

[3] It is the settled rule of the law that arrangements and combinations among prospective bidders for municipal contracts to prevent competition among themselves, and to bring about an award at a figure which is not the result of an honest competition, are contrary to public policy and void. Such contracts being illegal and void, no inquiry is necessary as to the particular effect of the contract. Dillon, Mun. Corp. p. 1165, § 781; People v. Stephens, 71 N. Y. 527; McMullen v. Hoffman, 174 U. S. 639, 19 Sup. Ct. 839, 43 L. Ed. 1117; James v. Fulcrod, 5 Tex. 512, 55 Am. Dec. 743. As said in the Texas case last cited:

"Any agreement or combination, therefore, the object and effect of which, is to chill the sale and stifle competition, is illegal; and no party to the agreement or combination, can derive benefit from the sale."

It would not matter in this case that, while combining to obtain the money of the city at less than a proper interest, one of the parties may have, to use an expressive colloquialism, "double-crossed" a partner in the matter. The tainted illegal contract had vitiated the proceeding, and the city council was justified in rejecting the bids and advertising for others. The council was authorized and justified, under the circumstances, in fixing the minimum bid that would be entertained. That will probably have a most salutary effect in decreasing the chances of fraud and combination for obtaining gain at the expense of the taxpayers of Corpus Christi.

If appellant had attempted to show any injury inflicted on it by a rejection of its bid, it must have been a possible indefinite future injury, as it could not under any circumstances have become the treasurer or depository until the end of the term of the present depository in December, 1921. Appellant does not claim to be a taxpayer of the city, county, or state, or that any injury would result to it from a rejection of the bid. It has failed to show that any right belonging to it has been invaded by the acts of the city council, which it must be presumed were done along the lines of a duty owed to the people of the city of Corpus Christi. The council may have been actuated by political or other improper motives in reject-

ing the bids for the money of the city, but, if so, the record fails to reveal any such motives, and it must and will be presumed that they acted in good faith and in pursuance of what was considered a duty owed to the people of the municipality by its governing body. The council should not be disturbed in the discharge of duties resting upon them under the terms of the charter.

The judgment is affirmed.