HEID BROS, Inc., v. RIESTO.   (No. 1835.)*

(Court of Civil Appeals of Texas. El Paso. Feb. 25, 1926. Rehearing Denied March 18, 1926.)

1. Pleading ⬷36(1).

As a general rule, an admission in a pleading upon which a party goes to trial is conclusive against him.

2. Contracts ⬷138(6).

Where contract itself, or evidence necessary to prove it, shows it to be illegal, its illegality need not be pleaded.

3. Contracts ⬷119 — Monopolies ⬷17(1) — Contract for sale of wood held contrary to public policy and violative of Anti-Trust laws, where it was given to plaintiff in consideration of his not competing as bidder on government contract (Rev. St. 1925, arts. 7426, 7428, 7437).

Contract for sale of wood held contrary to public policy and violative of Anti-Trust laws (Rev. St. 1925, arts. 7426, 7428, 7437), where it was given in consideration of plaintiff's agreement not to compete with defendant as bidder on government contract.

Appeal from District Court, El Paso County; P. R. Price, Judge.

Action by A. J. Riesto against Heid Bros., Incorporated. Judgment for plaintiff, and defendant appeals. Reversed and rendered.

See, also, 247 S. W. 349.

W. M. Coldwell, Jos. U. Sweeney, and Kemp & Nagle, all of El Paso, for appellant.

Lea, McGrady, Thomason & Edwards, of El Paso, for appellee.

PELPHREY, C. J.   This suit was instituted by appellee in Grimes county, Tex., on a contract for the sale of 12,000 cords of wood by appellee to appellant, and was transferred to the Sixty-Fifth judicial district court of El Paso county, Tex., on a plea of privilege by appellant.

Appellee alleged in his petition that the parties entered into a contract in writing on or about the 21st day of April, A. D. 1920; that appellee, by letter, offered to sell to appellant 12,000 cords of oak wood at $6 per cord, f. o. b. Texas loading points, said wood to be shipped at the rate of 1,000 cords per month, or in greater amounts, if satisfactory to all parties concerned, and that said offer was subject to immediate acceptance in the event appellant received an award of a government contract to provide oak wood; that appellant accepted by letter, but modified the acceptance by accepting appellee's offer subject to the government's award for a contract for the amount of wood mentioned in appellee's offer, upon which appellee's wood could be used; that appellee immediately consented to appellant's modified acceptance; that appellant actually secured a contract from the government for an amount of hard wood far in excess of 12,000 cords; and that said contract was one upon which appellant could have applied appellee's 12,000 cords of oak hard wood; and that, by reason of appellant's breach of said contract and refusal to accept the said wood from appellee, he was forced to sell said wood at a price of $3 per cord, and was thereby damaged in the sum of $36,000.

Appellant answered by general demurrer, special exceptions, and general denial, and for special answer alleged that the two letters of offer and acceptance constituted the contract, and that the contract was conditioned upon appellant being awarded a contract for 12,000 or more cords of oak wood, and that it, having received no such contract, was not bound to purchase said oak wood from appellee. Appellant also pleaded the two-year and four-year statute of limitations.

The case was tried before a jury on special issues, and, upon the verdict, judgment was entered by the court in favor of appellee for $22,625.00.

Opinion.

Among other things, appellant complains of the trial court's action in entering judgment for appellee, contending that appellee's evidence, upon which alone his right of recovery rested, showed that the agreement entered into between him and appellant was for the purpose of stifling competition and securing as high a price as possible on contracts with the United States Government, and was in violation of the Anti-Trust Laws and laws against monopolies, and was in restraint of trade and contrary to public policy.

The record shows that appellee filed in the district court of Grimes county a controverting affidavit to appellant's plea of privilege, in which he alleged that on or about April 21, 1920, he and appellant were rival bidders for a government contract and award for wood which appellant later received; that by letters and private interviews an agreement was reached between them that he would not bid on said contract, and that in consideration of his not bidding appellant agreed that it would share the contract with him to the ex-

tent of permitting him to furnish 12,000 cords of wood on said contract at $6 per cord.

We find that, when being cross-examined as a witness, appellee stated that those allegations were true, and further testified that the market value of oak wood in the month of May, 1920, was $5.50 per cord, 50 cents per cord less than the price which the letters show appellant agreed to pay.

Article 7426, R. C. S. 1925, § 3, defines a trust to be a combination of capital, skill, or acts by two or more persons, firms, corporations, or associations of persons, or either two or more of them, to prevent or lessen competition in the manufacture, making, transportation, sale, or purchase of merchandise, produce, or commodities, or the business of insurance, or to prevent or lessen competition in aids to commerce, or in the preparation of any product for market or transportation.

Article 7428, R. C. S. 1925, § 1, gives the following definition · of a conspiracy in restraint of trade:

"1. Where any two or more persons, firms, corporations or associations of persons, who are engaged in buying or selling any article of merchandise, produce or any commodity enter into an agreement or understanding to refuse to buy from or sell to any person, firm, corporation or association of persons, any article of merchandise, produce or commodity."

Article 7437 provides that any contract or agreement in violation of any provision of this subdivision shall be absolutely void and not enforceable, either in law or equity.

While we have been unable to find any case by the courts of this state in which an agreement of this character has been passed on in relation to the anti-trust statutes, yet there are numerous cases holding that contracts whose purposes were the same were illegal.

In the case of Daily v. Hollis, 66 S. W. 586, 27 Tex. Civ. App. 570, the court did not pass upon the question as to whether or not an agreement between bidders was in violation of the anti-trust laws, but did hold that, in a case where two competing contractors agreed as to the amount that each should bid for doing certain work, on an understanding that the successful bidder should share his profits with the•other, the successful bidder was not liable to the other on such agreement; the same being contrary to public policy. In discussing the case, the court had this to say:

"The agreement was entered into for the purpose of stifling competition between them, and by that means of securing the contract upon better terms than could have been obtained in fair and open competition. To consummate their purpose and impose on the Pintsch Company, resort was had to the artifice of filing a bid in the name of Daily, and thus keeping up the appearance of competition. It is useless to speculate as to whether the company was actually damaged. The intention of Daily and Hollis was to obtain an unfair advantage, and the means employed were calculated to accomplish their purpose. The improper motive underlying the agreement, and the method adopted of carrying it into effect, stamp it as essentially vicious. To uphold and approve such practices would be to encourage double dealing and fraud, and to retard the making of desirable improvements. The law will not compel the parties to such an agreement to a fair division of the spoils of their unlawful enterprise."

We also find that in cases where banks have entered into agreements to let one bank do the bidding for county or city depository and apportion the deposits among all of them was contrary to public policy and void. City National Bank of Corpus Christi v. City of Corpus Christi (Tex. Civ. App.) 233 S. W. 375; Hall, Com'r of Ins. & Banking, et al. v. San Jacinto State Bank et al. (Tex. Civ. App.) 255 S. W. 506.

Corpus Juris, vol. 13, p. 436, has this to say as to stifling competition for public contracts:

"Agreements not to compete with another in making bids, to withdraw a public or quasi public contract, to share in the result or profits, or other agreements having a direct tendency to prevent bidding or competition, are against public policy."

[1] As a, general rule an admission in a pleading on which a party goes to trial is conclusive against him. 22 Corpus Juris, p. 422; Southwestern Portland Cement Co. v. Kezer (Tex. Civ. App.) 174 S. W. 661; Barnes et al. v. Central Bank & Trust Co. et al. (Tex. Civ. App.) 153 S. W. 1172.

[2] And we can see no reason why this case should be an exception to that rule. Where a contract itself or the evidence necessary to prove it shows it to be illegal, its illegality need not be pleaded. Mullin v. Nash-El Paso Motor Co. et al. (Tex. Civ. App.) 250 S. W. 472; Osage Oil & Gas Co. v. Caulk (Tex. Civ. App.) 243 S. W. 551; Bishop v. Japhet (Tex. Civ. App.) 171 S. W. 499.

[3] We find that the appellee, in his controverting affidavit, alleges specifically facts which show the contract between him and appellant to be in restraint of trade and contrary to public policy, that appellee, when testifying as a witness in the case, stated that the facts alleged in the controverting affidavit were true, and that he, in pursuance of said illegal agreement, quoted Ed Sachs, another wood dealer, prices higher than those he had quoted to appellant, for the purpose, he says, of giving appellant an advantage in bidding for the government wood contract.

This case would be different if appellant had defended on the ground of the illegality of the contract and appellee had denied the illegality. In that case the question whether or not it was in violation of the statutes or contrary to public policy would be a question for the decision of the court or jury trying the case; but, in a case where the party seeking to recover on the contract alleges the agreement to have been entered into for the

purpose of stifling competition on the sale of supplies to the government which it is his duty to protect and defend, we feel that such an admission in his pleadings should be conclusive against his right to recover.

We are further of the opinion that the trial court should have, upon the pleading being called to his attention and upon hearing the testimony of appellee, instructed a verdict in favor of appellant.

Appellant has numerous other assignments of error, but, in view of our holding on the one discussed above, we shall not consider them.

The pleadings and testimony of appellee, showing the agreement upon which this suit is based to be both violative of our anti-trust statutes and contrary to public policy, the judgment of the trial court is reversed, and judgment is here rendered in favor of appellant.

Reversed and rendered.

HIGGINS, J. (concurring). The trial court, upon request, filed findings of fact supplementing the findings of the jury. It was found:

"That, prior to the conclusion of the contract between plaintiff and defendant, there was no agreement or promise that plaintiff would refrain from bidding for the government contract in the contemplation of the parties for the furnishing of wood; the consideration of the agreement is not tainted by fraud or illegality."

If the evidence supports this finding, the judgment should not be reversed upon the ground that the contract sued upon was based upon an agreement to stifle competition in bidding upon a government contract. But, if the evidence conclusively shows that the contract was based upon a prior agreement to stifle such competition, then, upon the authorities cited in the majority opinion, it should be reversed and rendered.

In my opinion the evidence conclusively shows that such was the fact, but I arrive at this conclusion in a somewhat different manner from that expressed in the majority opinion.

In the controverting affidavit filed in Grimes county, contesting appellant's plea of privilege, it was alleged:

"*Plaintiff alleges further: That he is engaged in the business of buying, selling, and contracting for wood, on a large scale. That one of the most important contracts which contractors are able to secure in this line is the government contracts and awards for wood for use of government employees. That at the time hereinbefore alleged, on or about and prior to April 21, 1920, plaintiff and defendant were rival bidders for the government contract and award. That the defendant in private interviews, and by letters to plaintiff, agreed that, if plaintiff would not become a rival bidder for the government contract for the fiscal year ending June 30, 1921, and would assist defendant in securing this contract, defendant, in event of secur-*"

ing the award, would share same with the plaintiff to the extent that plaintiff would be permitted to furnish 12,000 cords of wood at $6 per cord under said contract with the government. Plaintiff says: That the defendant represented and agreed that it would bear all expenses of securing the contract, make all bonds, and take all of the risks, and, in consideration for this, the plaintiff would furnish 12,000 cords at said price of $6, a little less than the price the government was to pay defendant. That the plaintiff, relying on the offer and representations of the defendant, did not become a rival bidder for said government contract. That, relying upon the promises of the defendant, plaintiff returned to Grimes county, Tex., and worked diligently in behalf of the defendant. That said government awards are made to the lowest responsible bidder. That plaintiff used all honorable and legitimate means and methods to ascertain the probable bids of prospective bidders. That, knowing nearly all prospective bidders and the location of their wood and supplies, plaintiff would study the situation, the cost of the wood, the expense of cutting and loading same, the freight charges, and other expenses incident to wood contracts. That in this manner plaintiff was able to determine the probable amount of rival's bid, and would immediately notify the defendant. That in addition to this plaintiff interviewed the government officials, whose duty it was to supervise these bids, in order to gain information which would be useful. That the defendant took advantage of plaintiff's information and acted on plaintiff's advice in the matter. That, by using the information gained through the labor and diligence of the plaintiff, the defendant was able to, and did, revise his figures and bid in such manner that defendant secured the government contract and award for about 31,000 cords of wood for fiscal year ending June 30, 1921. That plaintiff did the greater part of this work in Grimes county, Tex., and with the distinct understanding and upon the strength of defendant's agreement to share said contract and award to the extent that plaintiff should furnish said 12,000 cords at $6 per cord. That, after thus assisting the defendant to secure this contract and award with the government, the defendant fraudulently permitted plaintiff to make all necessary arrangements to comply with said contract in Grimes county, Tex., and, after making said arrangements, the defendant refused to share said award and contract as agreed upon. That the acts of the defendant constituted a fraud practiced on plaintiff in Grimes county, Tex." (Italics mine.)

This controverting affidavit was functus officio when the case was tried upon its merits in El Paso county. For this reason the allegations therein are not to be taken as conclusively established against appellee, as is the case of distinct allegations against interest contained in pleadings upon which a case is tried. Railway v. De Walt, 70 S. W. 531, 96 Tex. 121, 97 Am. St. Rep. 877.

Upon the trial of the case upon its merits, the controverting affidavit, so far as respects the conclusive effect against appellee of the allegations therein, was in the attitude of a pleading abandoned or superseded by amendment. The admissions therein were not con-

clusive against him, but were subject to explanation and contradiction. But appellee did not attempt to explain or contradict the same.

While testifying and upon cross-examination the italicized portion of the controverting affidavit was read to him. He then and there affirmed the truth of the statements therein contained. He did not in any wise attempt to explain or contradict the same.

In this situation I think the truth thereof should be conclusively assumed against him, especially so since the only evidence which can be construed as contradicting his testimony with respect thereto is the inference which may be deduced from Heid's testimony that at the conference in El Paso, when the contract sued upon was made, "all that was said was a matter of price and the amount of wood he could offer."

It seems to me that a plaintiff, who upon the witness stand unequivocally affirms a state of facts within his own knowledge, and which shows that the contract upon which he sues is contrary to public policy, is concluded thereby.

If these facts had been distinctly and affirmatively alleged in the petition upon which the case was tried, he would have been concluded thereby, for the purposes of the trial (Railway v. De Walt, supra), and there is no reason why he should not be likewise concluded by his unequivocal affirmation of their truth while testifying as a witness in his own behalf.

I therefore concur in the reversal and rendition of the judgment.