SAN PATRICIO COUNTY v. SHAW, Banking Com'r, et al.*

No. 8939.

Court of Civil Appeals of Texas. San Antonio.

June 22, 1932.

Rehearing Denied July 27, 1932.

Boone & Raymer, of Corpus Christi, and John W. Gaines, of San Antonio, for appellant.

Jno. W. Goodwin and Jay H. Brown, both of Austin, H. S. Bonham, of Corpus Christi, and W. B. Moss, of Sinton, for appellees.

FLY, C. J.

Appellant, San Patricio county, instituted the suit against Commercial State Bank of Sinton, James Shaw, state banking commissioner, B. R. Smith, special liquidating agent for Shaw, and the Sinton State Bank of Sinton, to establish the county's right to, and to recover of Commercial State Bank, the sum of $158,373.85 and interest.

The court overruled all demurrers, and, after hearing the evidence, declared that it did not sustain a cause of action, and rendered judgment for appellees.

It was alleged and proved that in 1922 or 1923 the two banks, the only ones in Sinton, entered into an agreement whereby the Sinton State Bank was to file a certain low bid for the county money, and the Commercial State Bank would file a higher bid than the one made by the Sinton State Bank. In other words, it was an agreement that the bid of the Sinton State Bank would be accepted, that the Sinton State Bank would obtain the county money and be designated as the county depository. The agreement worked successfully for a number of years, up to and including 1931, when the Sinton State Bank failed, on October 3, and was taken charge of by James Shaw, banking commissioner.

The Commercial State Bank, in effect, admits the material facts of the petition that the agreement between the banks existed by which the last-named bank had allotted to it by the Sinton State Bank practically one-half of the county funds, and the Commercial State Bank made a bond to the depository bank to indemnify it for the funds intrusted to it. These facts were not contravened, and Sparks, vice president, practically admitted the fact of the agreement, but insisted that the agreement was not made to interfere with bidding or cause the county to get only one bid. The agreement could have no other effect, and was intended to have no other effect. No deposits from the Sinton State Bank were ever placed by the last-named bank in the Commercial State Bank until after the agreement had been entered into, and the marvelous coincidence occurred after the agreement. The testimony could lead to one reasonable conclusion, and that was that the two banks entered into an agreement to stifle bidding and absolutely fix the amount of interest that would be paid on the money of the citizens of the county.

Such agreements entered into between two banks, whenever considered by courts, have been condemned as fraudulent and void. As was said by this court in City Nat. Bank v. Corpus Christi, 233 S. W. 375, 378, speaking on the subject under consideration: "It is the settled rule of the law that arrangements and combinations among prospective bidders for municipal contracts to prevent competition among themselves; and to bring about an award at a figure which is not the result of an honest competition, are contrary to public policy and void. Such contracts being illegal and void, no inquiry is necessary as to the particular effect of the contract. Dillon, Mun. Corp. p. 1165, § 781; People v.

Stephens, 71 N. Y. 527; McMullen v. Hoffman, 174 U. S. 639, 19 S. Ct. 839, 43 L. Ed. 1117; James v. Fulcrod, 5 Tex. 512, 55 Am. Dec. 743."

It would not matter what the motives may have been: such agreements are contrary to public policy and detrimental to the public interests, which always meet with condemnation. S. A. Gas Co. v. State, 22 Tex. Civ. App. 118, 54 S. W. 289, 293. The court said: "It does not matter that the parties to the unlawful combination may not have been actuated by any bad motive, or that the public may have been temporarily benefited by it, such combination was incompatible with public policy, and is condemned by law."

Citing the Bank v. Corpus Christi Case, the Court of Civil Appeals at El Paso, in the case of Heid Bros. v. Riesto, 281 S. W. 638, 639, held: "We also find that in cases where banks have entered into agreements to let one bank do the bidding for county or city depository and apportion the deposits among all of them was contrary to public policy and void. City National Bank of Corpus Christi v. City of Corpus Christi (Tex. Civ. App.) 233 S. W. 375; Hall, Com'r of Ins. & Banking et al. v. San Jacinto State Bank et al. (Tex. Civ. App.) 255 S. W. 506."

Such agreements as that virtually admitted by Sparks have never been tolerated in the courts of the country. They outrage public policy and tend to place the public interests at the mercy of those placing their private desires above any considerations of the public rights.

 When the agreement was shown to have been entered into in 1922 or 1923, and acted on the same way for every year from that time until 1931, it is asking too much to insist that the agreement should have been specifically proven for each year. It was conceived in sin and nurtured in the same way, with the same food, for all the years. It was a continuous performance, and the public were getting the worst of it in each recurring year. The bids were stifled each year for about six years, and then the game had become so easy that no pretense was further needed, and only one bank made a bid, but the spoils were still divided.

The evidence showed clearly that practically one-half of the last funds deposited in the Sinton State Bank were placed in the Commercial State Bank, and the latter recognizes in its pleading that the public funds were in its custody and that it stood ready to pay them out to the owner. The county should have them. It was not shown that the commissioners' court knew that they had been entertaining only one bid, but, if it had been so shown, the rights of the county would not be lost thereby. Making the court a coconspirator of the banks could not destroy the rights of the public.

The county, attempting to protect the public interests, labored under the disadvantage of having no evidence but what it could extract from its opponents, but was fortunate in obtaining an unwilling witness who disclosed the true status of affairs to the court. The testimony of Sparks alone was sufficient to show a stifling of bids and a trampling upon the rights of the citizenry of San Patricio county. The whole of the evidence tends to sustain the claims of the county, and the judgment did not follow the testimony.

 The funds of the county were placed in the hands of the depository bank and were a trust fund to be held for the county; and no claims of depositors could attach to it, but the rights of the county to the fund followed it wherever it could be traced. Practically one-half of the funds were traced into the hands of the Commercial State Bank. There was no doubt as to its identification, but the Commercial State Bank, in effect, admitted its possession of the county funds. No higher degree of identification of the funds could be procured; no higher or stronger identification is required by law. It was the money of the county.

The judgment of the trial court is reversed, and it is the judgment of this court that the county of San Patricio, appellant, do have and recover of and from the Sinton State Bank, James Shaw, state commissioner of banking, and B. R. Smith, as liquidating agent, the sum of $386,507.54, the entire funds of the county on deposit in the said bank, and further that the county of San Patricio recover of the Commercial State Bank of Sinton the sum of $158,373.85, being the amount transferred, of the county funds, by the Sinton State Bank to the Commercial State Bank; that sum, when collected, to be placed as a credit on the judgment against the Sinton State Bank. The costs will be taxed equally against the two banks.

Reversed and rendered.

On Further Hearing.

The court, upon its own motion, has this day set aside the judgment heretofore rendered in this cause, and in lieu thereof renders the following judgment:

The judgment of the trial court is reversed, and it is the judgment of this court:

That the claim of appellant, San Patricio county, to said sum of $158,373.85, with interest thereon from the 3d day of October, 1931, to the 4th day of November, 1931, at the rate of 2½ per cent. per annum, be and the same is hereby established against appellees James Shaw, state banking commissioner, B. R. Smith, special liquidating agent in charge of the affairs of said Sinton State Bank, and said Sinton State Bank of Sinton, Tex., and that said appellees be and they are hereby

adjudged to have no right to, interest in, or claim on said funds.

That appellant, San Patricio county, Tex., do have and recover of and from appellee said Commercial State Bank of Sinton, Tex., the said sum of $158,373.85, with interest from October 3, 1931, to November 4, 1931, at the rate of 2½ per cent. per annum, less a credit thereon of the sum of $500 so allowed to said appellee and deducted from said sum as attorney's fees. That said appellee Commercial State Bank of Sinton, Tex., be and it is hereby ordered forthwith to pay over said sum of money with interest so adjudged to appellant, San Patricio county, and that, if not so paid, said county may have execution therefor.

That the costs incurred herein be and the same are herein taxed against appellees James Shaw, state banking commissioner, and B. R. Smith, his special liquidating agent in charge of the liquidation of the affairs of said Sinton State Bank.