BANK OF SNYDER et al. v. HOWELL et al.
(No. 30–2667.)

(Commission of Appeals of Texas, Section B. Feb. 19, 1919.)

1. PRINCIPAL AND SURETY &⟶174 — INDEMNITY — DEPOSIT IN BANK — RELEASE OF MORTGAGE.

Where vendors of land deposited in bank $1,000 of total price paid in cash, to be paid over to them when they should obtain release of mortgage and place it in bank, bank occupied toward buyer position of surety for vendors, and vendors to bank position of indemnitors, they having informed bank release had been obtained, and bank having applied deposit to payment of their note held by it, and refused to pay money to buyer.

2. LIMITATION OF ACTIONS &⟶56(2)—STATUTE OF LIMITATIONS—ACCRUAL OF CAUSE OF ACTION—ACTION AGAINST INDEMNITORS.

Enforceable cause of action did not arise in favor of bank against vendors of land, who had deposited $1,000 of price, to be repaid to them when they should obtain release of mortgage, until bank parted with its money in obedience to judgment against it in suit of buyer of land to recover special deposit of $1,000, vendors having represented to bank release of mortgage had been obtained, and bank having applied deposit to payment of vendors' note.

Error to Court of Civil Appeals of Fourth Supreme Judicial District.

Suit by the Bank of Snyder and others against Eli Howell and another, resulting in judgment for plaintiffs, which was affirmed as to the unnamed defendant, and reversed as to the named defendant and rendered in his favor by the Court of Civil Appeals (158 S. W. 574), and plaintiffs bring error. Judgment of the Court of Civil Appeals, reversing and rendering as to defendant Howell, reversed, and judgment of the trial court affirmed on recommendation of the Commission of Appeals.

Douglas Cater, of San Antonio, and Bryan F. Williams, of Galveston, for plaintiffs in error. Mangum & Townsend, of San Antonio, for defendants in error.

SADLER, J. Howell & McCue, as partners, were the owners of a tract of land in Oklahoma, near Snyder, against which there existed a mortgage securing an indebtedness of $1,000, due by Howell & McCue, and held by Ætna Life Insurance Company. They were and had been doing business with the Bank of Snyder, Okl., carrying in said bank a general and a special account.

In 1906, this condition existing, they sold to E. A. Patterson a tract of land for $3,200, obligating themselves to pay off and obtain release of the mortgage debt against the land. Deed was made to Patterson, and' he paid all of the consideration in cash, $1,000 of which amount was December 20, 1906, placed by Howell & McCue to their special deposit account in the Snyder bank, under a written contract filed in the bank authorizing it to pay over the sum to Howell & McCue when they should have obtained release for the mortgage and placed same in the bank. The contract provided that the release should be obtained within 30 days or within a reasonable time thereafter.

Howell & McCue became indebted February 21, 1907, to the bank on a note for $1,000. Some time during the summer of 1907, the $1,000 note held by the bank being past due, its president sought its collection. He approached Howell, and asked him with reference to the special deposit and whether it might be applied to the payment of the note. Howell informed him that the release had been obtained; that the matter had been closed up long ago, and that there was no objection to applying the deposit to the note. After a conference with McCue, who also informed the president of the bank that the $1,000 belonged to the firm, the deposit, either by check of Howell & McCue or by consent and acquiescence, was applied to the payment of the note held by the bank, the note marked paid and delivered to Howell & McCue.

Shortly thereafter Patterson called upon the bank and notified it that the release had not been obtained, that the mortgage debt had not been paid, and demanded the $1,000 special deposit. This the bank refused to pay, advising Patterson of the claim of Howell & McCue, and that it had under their direction applied the proceeds of the deposit to the payment of the note held by it.

On conference with McCue, who was acting for Howell & McCue, as well as on conference with Howell, they insisted that the bank contest the claim of Patterson to the $1,000 special deposit. The bank fought the Patterson suit to a final determination, and paid, in satisfaction of the judgment obtained against it by Patterson, $1,273, this payment having been made the 1st day of January, 1911.

A short time afterwards this suit was filed in the district court of Bexar county by the bank against Howell & McCue to recover the amount of money which it had paid in satisfaction of the Patterson judgment. While the evidence is conflicting on the above facts, yet the findings of the jury and of the Court of Civil Appeals are in accordance with the statement made above.

In the suit McCue did not answer. Howell, among other answers, pleaded the bar of the two and four years statutes of limitation. A trial in the district court resulted in a verdict in favor of the bank against the defend-

---

&⟶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

ants for $1,273, with interest thereon at 6 per cent. from January 1, 1911. From that judgment an appeal was had to the Court of Civil Appeals by Howell alone. The judgment of the lower court as to McCue was affirmed, and as to Howell reversed and rendered in his favor (158 S. W. 574); the Court of Civil Appeals holding that the suit was one arising out of fraud and debt, and that the claim of the bank against Howell was barred, the cause of action in favor of the bank against Howell accruing more than two years prior to the commencement of the suit in the district court of Bexar county.

Writ of error was granted by the Supreme Court (170 S. W. xx) in the view that the bank suit against Howell & McCue was one arising out of indemnity, and that the statute of limitation did not begin to run, the cause of action not accruing until the bank paid the Patterson judgment. Under this state of the record, the only question we have for consideration is as to the correctness of the holding by the Court of Civil Appeals that the cause of action was founded in fraud and debt arising therefrom rather than in indemnity.

### Opinion.

In order to determine the rights involved in this case, it is necessary, first, to ascertain whether the Court of Civil Appeals correctly applied the substantive law determining the character of action arising on the pleadings and evidence in favor of the plaintiff.

The Court of Civil Appeals reaches the following conclusion with reference to the law applicable to the cause of action:

"This suit was brought upon the theory that appellee's cause of action accrued at the time it actually paid the judgment of Patterson, and that its action was one for indemnity, and not of debt. But that is not the law. It is well settled in this state that, in cases where one has been caused to suffer loss by reason of the deceit or fraud of another, the cause of action thereon accrues at the time the deceit or fraud is discovered, or when it should have been discovered by the use of ordinary diligence on the part of the one damaged, and limitation begins to run against such cause of action at that time."

It further concludes:

"Therefore, when appellee on April 15, 1908, discovered that the representations made by Howell & McCue, upon which it surrendered their note, were false, and that the release provided for in the escrow agreement had not been procured by them, two recourses were open to them: They had the right to sue Howell & McCue upon the original note, or to bring an action against them for damages for deceit. In the former alternative the statute of limitation would have been four years from the maturity of the note, and in the latter it would have been two years after the date of discovery of the fraud. The bank elected to pursue neither of these courses, but defended the action of Patterson until final judgment, and after paying the judgment against it sued Howell & McCue for indemnity of their loss. When it finally filed its suit on September 12, 1911, the bar of the four-year statute of limitation was perfected against the note, and that of the two-year statute against its action for deceit."

If the Court of Civil Appeals is correct in its conclusion with reference to the legal character of plaintiff's cause of action—the basis of its right of recovery—then its finding that the bar of the statute of limitation precluded plaintiff's recovery against Howell is correct. However, if plaintiff's cause of action and right of recovery arises out of indemnity, the bar of the statute is not applicable, since plaintiff's suit was filed in ample time to prevent the running of the statute. City of San Antonio v. Talerico et al., 98 Tex. 151, 81 S. W. 518.

To assist in the solution of this question, it is proper to analyze the relationship of the parties as disclosed by the evidence. At the time of the transaction between Howell & McCue and Patterson, the obligation rested upon Howell & McCue to procure the release of the mortgage lien debt then existing against the land sold to Patterson. This was not only the indebtedness of Howell & McCue originally, but they were under the further contractual obligation with Patterson to procure the release of this indebtedness, which carried with it the obligation of payment of the debt, if such should be necessary, as a condition to obtaining the release.

At the time the $1,000 was placed as special deposit with the bank, this contractual relationship existed between Patterson and Howell & McCue. The deposit was a security to Patterson guaranteeing the faithful performance of the contractual obligation resting upon Howell & McCue. The bank, as a depository, was under the obligation to Howell & McCue on the one part to pay over the $1,000 upon the procurement of the release of the mortgage debt, and on the other part to hold the indemnification for the benefit of Patterson.

With reference to the note that the bank held against Howell & McCue, these parties were under contractual obligations to pay this note at its maturity and in accordance with its terms. After the maturity of the note held by the bank, acting upon the representations and assurances of Howell & McCue that they had performed their contractual obligation to Patterson, and that they were the owners of and entitled to the special deposit with their authority or acquiescence, the bank applied the special deposit upon the contractual indebtedness held by

it against them, canceled it, and delivered it to them.

At this time what was the status of the parties? What legal obligations rested upon each? The bank under the escrow agreement was obligated to do one of two things in relation to the rights of Patterson—either to replace the $1,000 to the special deposit account, or to perform the contractual obligation of Howell & McCue with reference to the release of the lien indebtedness to the extent of $1,000 in the event that release had not been obtained.

The release had not been obtained, the lien indebtedness had not been satisfied by Howell & McCue or for their account. It, therefore, became necessary, in order for the bank to carry out and perform the obligation resting upon it, to return to the special deposit account and hold for Patterson the $1,000, or to pay whatever sum might be necessary, not exceeding $1,000, to satisfy the lien indebtedness against the land which Patterson had purchased, and to perform the obligation resting upon Howell & McCue. Patterson had the right to demand one or the other of these acts on the part of the bank. Upon Patterson's demand being made, the bank sought to ascertain the facts, and Howell & McCue insisted that they had performed their contract with Patterson, and that the special deposit was their property and belonged to them, and that they were authorized to apply it to the payment of the note held by the bank.

Under this state of facts the bank was presented with the determination of two courses affecting its rights: One to rely upon the statement of Howell & McCue and refuse to accede to Patterson's demand; the other to give credence to Patterson's claim, and then seek a recovery against Howell & McCue on the note, since if the bank, at Howell & McCue's instance, had misinterpreted the facts, and wrongly appropriated the special deposit to the payment of the note under a misrepresentation on the part of the makers of the note, there was no payment, and the obligation created by the note still existed, although the evidence of the obligation had been surrendered to the makers. The bank relied upon the representation of Howell & McCue and retained the money paid.

Under this state of the record, Patterson had no claim against Howell & McCue, if the lien indebtedness was in fact paid, unless, perhaps, it may have been such small expense as might have been incurred in obtaining the release. The only theory upon which Patterson could sustain his claim to the special deposit arose on account of the fact that it required the amount of the special deposit, or more, to satisfy the lien indebtedness and to obtain the release necessary to clear the title to his land.

Patterson had the right to have brought a suit against Howell & McCue to recover from them the amount of money which he may have had to pay in order to relieve the indebtedness against the land, the payment of which was the primary liability of Howell & McCue.

[1] The transaction between Howell & McCue and the bank, whereby the special deposit was applied to their indebtedness, also gave to Patterson the right to demand of the bank as much of the special deposit as was requisite to hold him harmless for the default of Howell & McCue. He elected to pursue this remedy. Under this state of the record, it is believed that the bank occupied toward Patterson the position of a surety for Howell & McCue, and Howell & McCue to the bank that of indemnitors. Such being the relationship, a right may have existed in behalf of the bank against Howell & McCue, under the facts, at the time that Patterson made his demand on the bank, but it had not ripened into an enforceable demand. The amount of recovery could not be known until the rights of Patterson, as against the surety and indemnitee, should be determined and definitely fixed. Bank v. Wallace (Civ. App.) 161 S. W. 957; Livingston & Co. v. Philley, 155 Ky. 224, 159 S. W. 665. In the suit which Patterson brought against the bank, it is manifest that the bank was treated as a surety, since the allegations appear in the petition filed in Oklahoma in the suit of Patterson against the bank, excusing the failure to make Howell & McCue parties by alleging and showing that they were insolvent and were beyond the jurisdiction of that court, being in other states.

The suit against the surety was carried to a termination, and resulted in fixing the liability of the bank for the obligation of its principals by the solemn decree of the court, which liability was met by the payment of the judgment. During the time of pendency of this litigation in Oklahoma, the primary obligation rested upon Howell & McCue to pay the necessary indebtedness secured by the mortgage lien and to protect Patterson from loss or damage. Hence, as to Patterson, the real obligation that rested upon Howell & McCue was that of indemnitors; they being obligated under their contract to protect him from liability on account of the lien existing against the land which they had sold to him. Also, during this time, the obligation rested upon Howell & McCue to protect their surety and indemnitee from liability for such amount as it might have to pay in order to meet the obligation resting upon them in favor of Patterson.

It may be conceded, for the purposes of this opinion, that Howell & McCue were guilty of fraud in the transaction where-

in the bank accepted the special deposit in payment of their note to it. This fraud simply brought about a condition out of which arose the relationship of the parties; of the bank to Patterson, and the implied contract of indemnity of Howell & McCue to protect the bank from liability to Patterson by reason of the application of the special deposit to the payment of the note held by it. 22 Cyc. 95. In our view, it is immaterial upon the question as to whether Howell & McCue acted fraudulently in procuring the application of the special deposit to their debt to the bank. The rights of the parties would be the same if they had directed the payment under an honest belief of right to do so, although mistaken therein.

[2] It is therefore our opinion that, under the state of the record, an enforceable cause of action did not arise until the bank parted with its money in obedience to the judgment rendered against it. In other words, that, although the right may have existed in favor of the bank to demand recoupment of Howell & McCue from the time of the appropriation of the special deposit to the payment of the note held by the bank, yet this right did not ripen into a mature obligation until a fixed damage had accrued; that is, until the actual payment by the bank of the amount of the judgment rendered in favor of Patterson against it.

If we are not in error in our conclusions with reference to the relationship of the parties—and we are convinced that we are correct in our position—then the basis of this suit arises out of indemnity, and the rules of law applied to the rights of the parties are those rules which are applicable in matters of indemnification. Such being our conclusion, we are of the opinion that the Court of Civil Appeals erred in their application of the law to the facts presented in this record, and therefore that the bar of the statute of limitation cannot avail Howell.

We are therefore of the opinion that the judgment of the Court of Civil Appeals, wherein it reversed and rendered as to Howell the judgment of the district court, should be reversed, and that the judgment of the district court should be affirmed.

PHILLIPS, C. J. The judgment as recommended by the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.

MONTGOMERY, P. J. (concurring). The writer, after carefully considering the opinion prepared by Judge SADLER, in this case, agrees to the disposition made of the case, and will briefly state the reasons therefor. The evidence was sufficient, in the opinion of the writer, to authorize the finding of the following facts, and, in support of the judgment of the district court, we are authorized to assume that such facts were found, viz.: That the Bank of Snyder, at the request or direction of Howell & McCue, appropriated the special deposit to the payment of a debt of Howell & McCue due to the bank; that the bank acted innocently, relying upon the representation of Howell & McCue that the release provided for in the contract between Patterson and Howell & McCue had been obtained; and that when the fund was claimed by Patterson that Howell & McCue in effect advised the bank to defend the suit brought by Patterson, and consulted with the bank as to what defenses should be presented.

Under these circumstances, the writer thinks there was an implied agreement that, if the suit was lost, Howell & McCue would indemnify the bank.

"When an act has been done by the plaintiff under the express directions of defendant, which occasions an injury to the rights of third persons, defendant will be bound to indemnify plaintiff against the consequences of the act, provided such act is not apparently illegal in itself, and is done honestly and bona fide in compliance with defendant's directions." 22 Cyc. p. 95.

We think the principle announced above applicable to this case. The bank held the $1,000 deposit subject to the terms of the contract between Howell & McCue and Patterson. It was its duty to hold the fund until Howell & McCue had performed their agreement to obtain the release. Howell & McCue represented to the bank that the release had been obtained, and directed the bank to apply the deposit to the payment of Howell & McCue's debt. Under these circumstances, the law implied an agreement on the part of Howell & McCue to indemnify the bank against the claim of Patterson to the fund.

When the bank was compelled to pay the judgment obtained by Patterson, it, for the first time, had a cause of action based on the implied contract of indemnity, and therefore the cause of action was not barred by limitation when this suit was brought. Ample authority is cited in the opinion of Judge SADLER to support the last proposition. The writer thinks it necessary, in order to indicate clearly the reasons for his concurrence in the disposition of this case, to furnish the foregoing memorandum of his views.