## UVALDE ROCK ASPHALT CO. v. CHAPIN-COLGLAZIER CONST. CO. (No. 7825.)

Court of Civil Appeals of Texas. San Antonio. Oct. 19, 1927.

Rehearing Denied Nov. 23, 1927.

1. **Monopolies** ⊙**13—Corporation agreeing to sell to certain contractors for less than to others could not recover additional sum from contractor outside combination, which tended to create monopoly.**

Asphalt mining company, agreeing to sell rock asphalt to certain contractors for less than to others, and to pay to former additional amount exacted from competitors outside combination, *held* not entitled to recover such additional sum for asphalt sold to competing contractor; combination tending to give contractors therein a monopoly.

---

**2. Monopolies ⬅12(1)—Combination to restrain trade and create monopoly is "trust," though temporarily reducing prices (Rev. St. 1925, arts. 7426–7429).**

A combination to restrain trade and create a monopoly is a "trust," denounced by Rev. St. 1925, arts. 7426–7429, even though public is benefited by temporary reduction of prices.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Trust (Combination).]

**3. Monopolies ⬅23—Evidence that seller, suing for price, charged public more than certain contractors, held admissible to show intent to injure defendant competitor.**

In action for amount charged contractor for rock asphalt in excess of amount paid by him, evidence that plaintiff fixed higher prices to public than to certain other contractors *held* admissible as tending to show intent to injure and embarrass a paving competitor and possible rival in sale of asphalt.

**4. Monopolies ⬅23—Evidence that president of plaintiff corporation, charging defendant more for asphalt than other contractors, denied railroad right of way across his land to defendant's asphalt land, held admissible to show conspiracy to monopolize product.**

In action against paving contractor for amount charged for asphalt in excess of price to certain other contractors, evidence that president of plaintiff corporation had denied railroad right of way across his land to defendant's lands, which contained similar asphalt, *held* pertinent and proper to show conspiracy to stifle competition and monopolize a product of nature.

**5. Mines and minerals ⬅47—Rock asphalt is natural product belonging to owner of soil, to be used in consonance with state laws.**

Rock asphalt is a product of the soil stored up by nature and belongs, wherever discovered, to owner of soil, to be used by him in consonance with laws of state.

**6. Trade-marks and trade-names and unfair competition ⬅9 — Corporation mining rock asphalt in Uvalde county had no proprietorship in, or exclusive right to, name "Uvalde rock asphalt."**

"Uvalde rock asphalt" being a product of the soil in Uvalde county, corporation mining it had no proprietorship in, or exclusive right to, such name, as against other miners of such material in that county.

**7. Patents ⬅1—Trade-marks and trade-names and unfair competition ⬅1—Name of natural product cannot be withdrawn from general use by trade-mark or patent.**

The name of a commodity or natural product cannot be withdrawn from general use by a trade-mark or patent.

**8. Monopolies ⬅28(9)—Set-off and counterclaim ⬅28(1)—Damages to contractor, charged more for asphalt than other contractors, was amount of charge, and could be set off against charge sued for.**

Amount of damages sustained by paving contractor, charged more for asphalt than price to certain contractors under agreements in restraint of trade, was amount of excessive and illegal charge sued for by seller, and could be offset against such sum, so as to preclude recovery.

Appeal from District Court, Bexar County; Robert W. B. Terrell, Judge.

Action by the Uvalde Rock Asphalt Company against the Chapin-Colglazier Construction Company. Judgment for defendant, and plaintiff appeals. Affirmed.

Kampmann & Burney and Albert Buss, all of San Antonio, for appellant.

Boyle, Ezell & Grover, of San Antonio, for appellee.

FLY, C. J. This suit was instituted by appellant against appellee to recover the sum of $6,894.50, alleged to be a balance due on an account of $28,710, for approximately 7,000 tons of rock asphalt at $4 per ton. Appellee filed a general demurrer, general denial, and answered specially that during the time the rock asphalt was being sold to appellee, appellant held a monopoly on the production and sale of that material in the territory in which it was being sold; that appellant to hold and continue such monopoly and stifle competition, and to prevent appellee, among others, from competing with appellant, divided the territory, in which the asphalt was to be sold, into districts, and entered into agreements with favored contractors, whereby a district was allotted to such favored contractor and asphalt rock was sold to him for $3 a ton, while it was sold to appellee and others not members of the combination for $4 a ton and the extra $1 paid over to the favored contractor.

It was further alleged:

"That it is not indebted to plaintiff in any sum whatsoever, for the reason that the price which plaintiff contemplated that plaintiff would receive for the rock asphalt sold to defendant was $3 per ton. That this defendant has already paid plaintiff $3 and more per ton for said rock asphalt, and therefore plaintiff has been paid in full for same. That the additional $1 a ton which plaintiff is seeking to recover in this suit was not to be received by plaintiff for its benefit and was not to be enjoyed by plaintiff, but, under the terms of the contract and agreement hereinabove referred to with the favored contractor, was to be collected by plaintiff as agent for such favored contractor, and that plaintiff in this suit is seeking to recover the amount sued for under and by virtue of said contract and agreement, which contract and agreement is illegal, null, and void, because it seeks to put into effect a combination and conspiracy in restraint of trade, prohibited by statute and the common law, and said contract which plaintiff is seeking to enforce as agent of said favored contractor against this defendant being null and void, plaintiff is not entitled to any recovery thereon."

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

The court rendered judgment that appellant take nothing by its suit and that it pay all costs of suit.

A written agreement was shown to exist between appellant and the Uvalde Company, in which it is stated that appellant "is engaged in the business of mining and selling a natural rock asphalt from mines and quarries in Uvalde county, Texas, and is further engaged in the business of constructing street pavement and the building of roads"; and that the Uvalde Company "is likewise engaged in the construction of pavement and the building of roads"; and that it was agreed that the Uvalde Company should be the agent of appellant for the purpose of laying Uvalde rock asphalt paving and its selling agent of said rock asphalt in a certain large territory comprising a large portion of Southwest Texas.

It was agreed that appellant would sell and deliver to the other party, on cars at Cline, natural rock asphalt at $3 per ton of 2,000 pounds. A general supervision of the work of the paving company was reserved and retained by appellant. The latter reserved the right to sell asphalt in the district allotted to the paving company at $4 per ton, the extra $1 to be paid to the Uvalde Company. A similar contract was made with W. E. Dozier, a paving contractor, and he was given Lee, Burleson, Robertson, Falls, Milam, Williamson, Bell, Burnett, and Caldwell counties. Appellee was a contractor for pavements, but had no contract granting privileges with appellant. It belonged to the outside group, which was compelled to pay $1 more per ton for material to be used in filling its contracts. Appellant introduced some evidence to the effect that it gave lower prices to certain parties because they advertised, or were to advertise, its material; but appellees used and advertised the rock asphalt more than those who were given preferences. Appellees, however, owned rock asphalt land, and appellant was contesting their approach to it and throwing obstacles in the way of their business. The Uvalde Company was named in the contract as selling agent of appellant in the exclusive vast territory granted to it, even the owner not being allowed to sell without paying a bonus of $1 a ton to the agent. There were three contracts introduced in evidence between appellant and the Uvalde Company, the Uvalde Paving Company and W. E. Dozier, which gave them peculiar and exclusive privileges over a large portion of the state of Texas, and was evidently intended to stifle and destroy competition in paving and the use of other materials, and throttle and cripple business and enterprise. Appellee paid in full for all the rock asphalt obtained by it from appellant at the rate of $3 a ton, at which rate appellant was selling to appellee's competitors. The testimony showed damages to appellee at least in the sum of $1 a ton for the 7,000 tons on which the suit was based. Each of the contracts provided:

"First party reserves the privilege of selling rock asphalt in territory hereinabove designated, and agrees that in event such sales are made it will be at advanced price of $1 per ton of 2,000 pounds, which advance price of $1 will represent a commission due and payable to second party herein to cover the cost of second party in promoting and advertising Uvalde rock asphalt in such territory."

That clause was followed by this provision:

"Second party agrees that it will not promote or be interested in, directly or indirectly, any character of pavement or road surfacing construction other than surfacing with Uvalde rock asphalt during the life of this agreement."

There are twelve assignments of error, which really present but one question, and that is the illegality of the acts of appellant in entering into contracts by which it in effect bound itself to sell to the general public its rock asphalt, of which it had a monopoly, for one price, and to its favorites for another price. If the acts of appellant were not, as alleged in the answer, violative of the provisions of title 126, arts. 7426, 7427, 7428, and 7429, Rev. Stats. of 1925, corresponding to former articles 7796 to 7799, inclusive (Rev. St. 1911), then none of the testimony was pertinent and proper and the suit should have been dismissed. If the acts complained of, as constituting a trust and conspiracy against trade, were such, then the contracts tending to show that conspiracy were clearly admissible, because they undoubtedly tended to prove the allegations of the answer.

The statute cited defines a trust as—

"a combination of capital, skill or acts by two or more persons, firms, corporations, or either two or more of them for either, any or all of the following purposes:

"1. To create, or which may tend to create, or carry out restrictions in trade or commerce or aids to commerce or in the preparation of any product for market or transportation, or to create or carry out restrictions in the free pursuit of any business authorized or permitted by laws of this state.

"2. To fix, maintain, increase or reduce the price of merchandise, produce or commodities, or the cost of insurance, or of the preparation of any product for market or transportation.

"3. To prevent or lessen competition in the manufacture, making, transportation, sale or purchase of merchandise, produce or commodities, or the business of insurance, or to prevent or lessen competition in aids to commerce, or in the preparation of any product for market or transportation.

"4. To fix or maintain any standard or figure whereby the price of any article or commodity of merchandise, produce or commerce, or the cost of transportation, or insurance, or the preparation of any product for market or transportation, shall be in any manner affected, controlled or established.

"5. To make, enter into, maintain, execute or carry out any contract, obligation or agreement by which the parties thereto bind, or have bound themselves not to sell, dispose of, transport or to prepare for market or transportation

any article or commodity, or to make any contract of insurance at a price below a common standard or figure or by which they shall agree in any manner to keep the price of such article or commodity or charge for transportation or insurance, or the cost of the preparation of any product for market or transportation at a fixed or graded figure, or by which they shall in any manner affect or maintain the price of any commodity or article or the cost of transportation or insurance, or the cost of the preparation of any product for market or transportation between them or themselves and others, to preclude a free and unrestricted competition among themselves or others in the sale or transportation of any such article or commodity, or business of transportation or insurance, or the preparation of any product for market or transportation, or by which they shall agree to pool, combine or unite any interest they may have in connection with the sale or purchase of any article or commodity, or charge for transportation or insurance or charge for the preparation of any product for market or transportation whereby its price or such charge might be in any manner affected.

"6. To regulate, fix or limit the output of any article or commodity which may be manufactured, mined, produced or sold, or the amount of insurance which may be undertaken, or the amount of work that may be done in the preparation of any product for market or transportation.

"7. To abstain from engaging in or continuing business, or from the purchase or sale of merchandise, produce or commodities partially or entirely within the state of Texas, or any portion thereof." Article 7426.

[1, 2] In this case it is shown that appellant entered into an agreement with at least three different paving contractors to sell them rock asphalt, a material largely used for topping streets and roads, at a price one-fourth cheaper than to others in the most thickly populated counties of the state, and even going so far as to give them the excess $1 paid by their competitors not in the combination. The obligation to sell to all other paving contractors or any other purchaser of rock asphalt, of which appellant had a monopoly, applied to every ton of rock asphalt mined by appellant and sold in probably over one-half the territory of the state and two-thirds of the population and wealth. Every one in the vast territory covered by the contracts, outside the charmed circle of the combination, had tribute of $1 a ton levied upon and wrested from him in the interest of three paving contractors. The inevitable result was to create or tend to create and carry out restrictions in trade and to restrict the free pursuit of a legal business in this state. The result of the combination did undoubtedly increase the price of a favorite paving material, and did tend to prevent or lessen competition in the paving business, and was a handicap to most paving contractors and a burden on the state, cities, or individuals using the material controlled by appellant. It cannot be denied that the effect of the contracts fixed and maintained a figure

for rock asphalt whereby its price "affected, controlled, or established." By the contracts the owner could not sell to any one for a sum less than $4 a ton, for if it did it subjected itself to a fine of $1 a ton payable to the favored contractors. Not only did the combination hamper and obstruct the free actions of appellee and other contractors outside the combination, but it increased the cost of paving in the territory, and had a tendency to give the contractors in the combination a monopoly, with appellant, of all paving done with rock asphalt, and incidentally strangle and destroy other contractors. But if no such dire results followed, or could follow, still, as the contracts were made and entered into to restrict trade and did restrict, even though the public had been benefited, the combination was unlawful.

As said by this court in San Antonio Gas Co. v. State, 22 Tex. Civ. App. 118, 54 S. W. 289:

"A 'trust' as defined by article 5313, Sayles' Rev. Civ. St., is 'a combination of capital, skill, or acts by two or more persons, firms, corporations or associations * * *' for the purposes enumerated; the second being 'to increase or reduce the price of merchandise, produce or commodities.' If the combination was made, and its object was in restraint of trade and to create a monopoly, the statute denounces it, no matter if the immediate result of the combination may be the temporary reduction of prices."

[3, 4] In the case now under consideration evidence of fixing higher prices to the public was pertinent, with other facts as tending to show an intent to injure and embarrass a competitor in paving and a possible rival in the sale of rock asphalt. The combination not only showed an intent to restrict trade, but to destroy a dangerous competitor in the mining and sale of rock asphalt. In this connection it may be said that the evidence to the fact that the president of appellant had denied the right of way of a railroad company across his land on its desired route to the land of appellee, which contained the material monopolized by appellant, was pertinent and proper to show, with other circumstances, that there was a conspiracy to stifle competition and monopolize a product of nature so useful in the building of roads and streets.

[5-7] The product sought to be monopolized was not one in which appellant had any particular proprietorship or dominion. But it is a product of the soil, stored up by nature under the control of nature's God, and wherever discovered belongs to him who owns the soil, to be used by him in consonance with the laws of the state. Appellant had no proprietorship in or exclusive right to the name of a product of the soil, or the name of the county in which it is found, no more than it could appropriate the name of Uvalde honey, Uvalde sunshine, or any product of Uvalde county. The name of a commodity or natural product cannot be

withdrawn from general use by trade-mark or patent. This is said in view of a claim of appellant that the name of "Uvalde rock asphalt" belongs to it because it so named the material taken out of its soil, although there may be millions of tons of Uvalde rock asphalt on the lands of other people.

Not only was the combination made in defiance of the law, but it was not made to increase the revenues obtained by appellant from its material, but to break down and destroy competitors, by compelling them to pay an outrageous tribute to the favorite contractors and coconspirators of appellant. No man not in the combination could contract for paving with rock asphalt, could bid on paving against his rival bidders in the combine, when paying $1 a ton extra for every ton of Uvalde rock asphalt used by him. To say that this combination was not a restriction on trade in view of the statute would amount to emasculation of the statute against conspiracies and trusts and give them license to levy onerous taxes on the people. The effect of such combination would be either to break down the outside contractor or levy tribute on the people.

The excuse given for the contracts, that advertising was sought to be obtained, is more specious than reasonable; but if a valid reason for the same had been given that would not excuse or mitigate a violation of the law. The inquiry in regard to the matter must be whether the acts were such as to be incompatible with the law. It would occur to fairminded people that a policy of treating the public justly and honestly would be a better mode of advertisement than one of treating them unfairly and levying tribute upon them.

The kind of contracts made by appellant with its contractors have often been denounced by the courts of Texas, as in contravention of the statute and public policy. The cases relied on by appellant fail to uphold the contracts made by it. Miller Brewing Co. v. Coonrod (Tex. Civ. App.) 230 S. W. 1099; Gin Co. v. Thomas (Tex. Civ. App.) 277 S. W. 438; State v. Willys-Overland (Tex. Civ. App.) 211 S. W. 609. The decisions cited are authority for the propriety of the judgment of the trial court in this case.

Evidently Mr. Smyth, president of the Uvalde Rock Asphalt Company, had grave doubts about the legality of the contracts in proof in this case and sought to decrease the gravamen of the offense by cutting down the territory allotted to the two companies and Dozier, and had his lawyer to "put it up to the Attorney General" of Texas. It seems that he was even contemplating using the illegality of one of the contracts to cancel it, which, as Smyth says, "We were trying to bust."

[8] Clearly, in this case the amount of damages sustained by appellee was the amount of excessive and illegal charge made by appellant for the rock asphalt, which was the amount for which appellant was seeking recovery. Appellee was authorized to offset the illegal charge with the illegal sum charged to him. Shaw v. Faires (Tex. Civ. App.) 165 S. W. 501; Bank v. Herrell (Tex Civ. App.) 190 S. W. 797; Bank v. Van Hutton (Tex. Civ. App.) 208 S. W. 363; Bank v. Howell (Tex. Com. App.) 208 S. W. 908; Couch & Bedding Co. v. George (Tex. Civ. App.) 222 S. W. 335; Birdsong v. Azar (Tex. Civ. App.) 258 S. W. 197.

We conclude that the evidence sustains the charge of a combination in restraint of trade, and that the contracts made by appellant with paving contractors were illegal, and that the amount sued for arose out of and was made possible by such combination; and the judgment is affirmed.